**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MIA MASON, individually, and on behalf of
all others similarly situated,

                 *Plaintiff*,

     *v.*

MACHINE ZONE, INC., a Delaware
corporation,

                 *Defendant*.

Case No.:

**JURY TRIAL DEMANDED**

**PLAINTIFF'S MOTION FOR AND MEMORANDUM**
**IN SUPPORT OF CLASS CERTIFICATION**

        Plaintiff Mia Mason, by and through her undersigned counsel, hereby respectfully moves

the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil

Procedure 23 (b)(3), but requests that the Court enter and continue the instant motion until after

the completion of discovery on class-wide issues, at which time Plaintiff will submit a more

detailed memorandum of points and authorities in support of class certification.[1]

## I.     INTRODUCTION.

        Even at this early stage of the litigation, this case presents a textbook example of an

action appropriate for class certification. Defendant Machine Zone, Inc., uniformly operates a

---

[1]      Plaintiff files this motion at the outset of the litigation to prevent Machine Zone, Inc.,
from attempting a so-called "buy off" to moot her representative claims (*i.e.*, tendering to her the
full amount of her individual damages alleged in her Class Action Complaint and Demand for
Jury Trial ("Complaint")). *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011)
("Class-action plaintiffs can move to certify the class at the same time that they file their
complaint. The pendency of that motion protects a putative class from attempts to buy off the
named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then
they can also ask the district court to delay its ruling to provide time for additional discovery or
investigation.").

video game called Game of War that purports to be a simple virtual warfare game. In reality, Defendant Machine Zone has artfully created (and profited from) an unlawful game of chance found within Game of War. Indeed, Defendant Machine Zone has made millions of dollars by selling "Gold" and "Chips" within its Game of War game to consumers who then wager the Chips (which were either purchased directly or converted from purchased Gold) for a chance at winning valuable prizes at the Game of War "Casino." The valuable prizes provide additional replays at Defendant's Casino and increase the value of consumers' accounts, which they can sell online to "cash out."

Plaintiff is just one of the consumers that has unwittingly played Defendant's unlawful game of chance. Since she began playing, Plaintiff has lost hundreds of dollars to Defendant Machine Zone. In light of Defendant's conduct, Plaintiff brought the instant lawsuit and now respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3). As discussed more fully below, Plaintiff's claims are readily certifiable because potentially tens of thousands of consumers, like herself, have lost money playing at Defendant's unlawful Game of War Casino.

Notwithstanding, Plaintiff respectfully requests that the Court (1) enter and reserve ruling on Plaintiff's Motion for and Memorandum in Support of Class Certification; (2) allow for and schedule discovery to take place on class-wide issues; (3) grant Plaintiff leave to file a supplemental memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery; (4) grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and, (5) provide all other and further relief that the Court deems reasonable and just.

## II.     FACTUAL BACKGROUND.

### A.     Facts Applicable to All Members of the Putative Class.

Machine Zone operates "Game of War," a mobile, free-to-play game available on Android and iOS devices, such as the Samsung Galaxy S5 and Apple iPhone. (*See* Class Action Complaint ["Compl."] ¶ 19.) Consumers can download and play the game for free, but Machine Zone encourages them to purchase "Gold" (the in-game currency) to advance gameplay and climb leader boards (*i.e.*, the global ranking of players). (*Id.*)

To generate revenue, Machine Zone created a virtual casino, aptly named as the Game of War Casino. (*Id.* ¶ 21.) Defendant's Casino is very similar to the popular spinning wheel games found at traditional casinos (*e.g.*, "Big Six Wheel" or "Wheel of Fortune"). (*Id.*) For its version of the spinning wheel, Defendant encourages consumers to play by wagering 5,000 Chips (approximately $0.60) to spin the wheel. (*Id.*) Consumers can purchase Chips from Defendant or they can exchange previously purchased Gold for Chips. (*Id.* ¶ 24, 25.)

When the consumer spins the wheel, Defendant uses an animated light to indicate a "spin." (*Id.*) The animated light then rotates around the wheel and stops after several seconds, and Defendant awards the consumer whatever prize the light lands on. (*Id.*) The prizes vary in value from "resources" that can be used to advance game play (*e.g.*, wood or stone) to high-value items such as additional Casino Chips or Gold. (*Id.*)

Similar to traditional spinning wheels found in casinos, consumers do not have any ability to control what prizes Defendant awards upon a spin. (*Id.*) After pressing the button to spin the wheel, Defendant does not accept any input or action until it awards the prize—no skill on the part of the consumer affects the outcome of a spin. (*Id.*) The outcome of a spin depends entirely on the rules Defendant has programmed into the Game of War Casino. (*Id.*) Defendant

programmed the rules that determine, for example, how much consumers can wager, how the wagers are deducted from accounts, how long each spin takes, how the spin is animated, the odds of winning each type of prize, and how the prize is presented and credited to the consumer. (*Id.*)

The prizes Defendant awards after spinning are valuable to Machine Zone and players alike. Machine Zone makes millions of dollars by selling Gold and Chips to consumers within the Game of War videogame. (*Id.*) Likewise, players are able to continue wagering at the Casino after they win additional Gold and Chips, and to cash out, players can turn to the secondary market to buy and sell Game of War accounts, with many being sold for $500 or more. (*Id.*)

**B.      Facts Applicable to Plaintiff.**

In early 2014, Plaintiff Mason downloaded Game of War onto her mobile device and began playing the game. (*Id.* ¶ 43.) Soon after, she began playing in the Casino where she wagered complimentary Chips for a chance to win a prize. (*Id.*) After she exhausted her complimentary Chips, Plaintiff Mason began purchasing more Chips by buying Gold in increments of at least $4.99. (*Id.*) Thereafter, and up until January 2015, Plaintiff Mason continued to purchase Chips and Gold so that she could wager Chips for a chance at winning a prize in Defendant's Casino. (*Id.*) In total, from early 2014 to January 2015, Plaintiff has lost more than $100 wagering at Defendant's Casino. (*Id.*)

**C.      The Proposed Class and Subclass.**

As a result of Defendant's conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of a class and a subclass of similarly situated consumers, which are defined as follows:

> **Class:** All persons in the United States who purchased Chips from Defendant and lost the Chips by wagering at Defendant's Game of War Casino.

> **Subclass:** All Class members who are residents of Maryland that lost money at

Defendant's Game of War Casino.

(Compl. ¶ 44.) As demonstrated below, the proposed Class and Subclass meet each of Rule 23's requisites to certification, and therefore, the instant motion should be granted in its entirety.

## III. THE PROPOSED CLASS AND SUBCLASS SATISFY EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) has been satisfied. Fed. R. Civ. P. 23. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and (iv) that both the named-representative and his or his counsel have and will continue to adequately represent the interests of the class (adequacy). Fed. R. Civ. P. 23(a).

In this case, Plaintiff seeks certification of the proposed Class under Rule 23(b)(3). To certify a class under Rule 23(b)(3), (i) questions of law or fact common to the proposed class members must predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

While a court need not inquire into the merits of the plaintiff's claims in determining whether to certify a proposed class, *see Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974), it also is not limited to "accept[ing] the plaintiff's allegations in the complaint as true; rather, an evidentiary hearing is typically held on the certification issue." *Monroe v. City of Charlottesville, Va.,* 579 F.3d 380, 384 (4th Cir. 2009), *cert. denied,* --- U.S. ----, 130 S.Ct. 1740, 176 L.Ed.2d 214 (2010). As such, while Plaintiff is confident the present case meets each of the requirements

for class certification, she requests, amongst other things, that the Court enter and reserve ruling

on her Motion for Class Certification and allow for and schedule discovery to take place on

class-wide issues.

**A.     The Numerosity Requirement is Satisfied.**

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous

that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). To satisfy this requirement

there is no specific number required, "rather practicality of joinder depends on several factors,

including: (1) the size of class, (2) ease of identifying and serving its members, (3) their

geographic dispersion, and (4) whether individual claims are so small as to inhibit a class

member from pursuing his own interest." *Cuthie v. Fleet Reserve Ass'n*, 743 F. Supp. 2d 486,

498 (D. Md. 2010). Generally, "[a] class consisting of as few as 25 to 30 members raises the

presumption that joinder would be impractical." *Id.* (citing *Dameron v. Sinai Hosp. of Balt., Inc.,*

595 F.Supp. 1404, 1408 (D. Md. 1984)).

Here, Mason alleges—and discovery will show—that Defendant has unlawfully profited

from tens of thousands of consumers that have wagered in the Game of War Casino, with

thousands of those individuals being residents of Maryland. (Compl. ¶¶ 4, 40, 45); *see also* Alba

Conte & Herbert Newberg, *Newberg on Class Actions* § 3:5, 243–46 (4th ed. 2002) ("Class

actions under the amended Rule 23 have frequently involved classes numbering in the hundreds,

or thousands . . . In such cases, the impracticability of bringing all class members before the

court has been obvious, and the Rule 23(a)(1) requirement has been easily met."). Moreover,

members of the Class and Subclass can be identified through Defendant's records, the class is

dispersed across the country, the subclass is dispersed throughout the state of Maryland, and

consumers claims are likely small compared to the burden and expense of individual prosecution

of their claims. (Compl. ¶¶ 30, 45, 50.) Accordingly, the proposed Class and Subclass satisfy the numerosity requirement.

**B.     The Commonality Requirement is Satisfied.**

Next, Rule 23(a) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To meet this commonality requirement, the representative plaintiff is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is present when "[t]he central facts and applicable law at issue ... are shared by all members of the proposed class." *Cuthie*, 743 F. Supp. 2d at 498-99 (quoting *Arrington v. Colleen, Inc.,* 2001 WL 34117734, at *3 (D. Md. Apr. 2, 2001)). The question of commonality is "not defeated by minor differences in the underlying facts of an individual case." *Cuthie*, 743 F. Supp. 2d at 499 (citation omitted).

Here, Plaintiff's and the Class's and Subclass's claims are based upon the same common contention: that Defendant's Game of War Casino is an unlawful gambling device. (Compl. ¶¶ 21–36.) That is, Defendant has intentionally camouflaged an unlawful game of chance as an innocuous video game to induce consumers into purchasing Gold and Chips for use at its Casino. (*Id.* ¶ 21)

Defendant's conduct gives rise to several factual and legal questions common to all members of the Class and Subclass, including: (i) whether Defendant's Game of War is an

unlawful gambling device as defined by Cal. Penal Code § 330b; (ii) whether Defendant's

conduct violates Cal. Civ. Code §§ 17200 *et seq.*; (iii) whether Defendant has been unjustly

enriched; and (iv) whether Defendant's Game of War is a gambling device as defined by

Maryland Code Criminal Law Section 12-101. (*Id*. ¶ 46.)

Accordingly, the commonality requirement is met.

**C.      Plaintiff's Claims are Typical of the Class.**

Typicality, the next requirement under Rule 23, requires that a plaintiff's claims be

typical of those of the other Class members. Fed. R. Civ. P. 23(a)(3). The typicality requirement

is closely related to the commonality requirement and is satisfied if "plaintiff[] and the class have

an interest in prevailing on similar legal claims. *Cuthie*, 743 F. Supp. 2d at 499 (citation

omitted). In fact, a "plaintiff's claim may factually differ and still be 'typical' of class member

claims, if 'it arises from the same event or practice or course of conduct that gives rise to the

claims of other class members, and if his or her claims are based on the same legal theory.'"

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 676 (D. Md. 2013) (quoting *Hewlett v.

Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 217 (D. Md. 1997)).

In this case, Plaintiff and the proposed Class and Subclass members were each subject to

Defendant's common course of conduct. That is, they each downloaded the Game of War video

game, purchased Gold and/or Chips (or converted Gold into Chips), and wagered at Defendant's

Casino for the chance of wining valuable prizes. (Compl. ¶¶ 26–36.) As such, by pursuing her

own claims, Plaintiff will necessarily advance the interests of the proposed Class and Subclass in

satisfaction of Rule 23(a)(3)'s typicality requirement.

**D.      The Adequacy of Representation Requirement is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to

"fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires that both "1) the named plaintiffs' interests are not opposed to those of other class members, and (2) the plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *Cuthie*, 743 F. Supp. 2d at 499 (citing *Mitchell–Tracey v. United Gen. Title Ins. Co.,* 237 F.R.D. 551, 558 (D. Md. 2006)). "[A]bsent contrary proof, class counsel are presumed competent and sufficiently experienced to prosecute the action on behalf of the class." *Id.* (citing *Hewlett,* 185 F.R.D. at 218).

In this case, Plaintiff has the same interests as the proposed Class and Subclass: obtaining the injunctive relief necessary to ensure that Defendant does not continue its unlawful conduct into the future and recovering the money that she lost to Defendant as a result of it. (Compl. ¶¶ 48, 52–84.) Plaintiff has no interests antagonistic to those of the Class and Subclass and will fairly and adequately protect the interests of the Class and Subclass; her pursuit of the instant action demonstrates as much. (*Id*. ¶ 48.)

Additionally, Plaintiff's counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class actions involving issues of similar or greater size, scope, and complexity as the present case. (See Firm Resume of Edelson PC, attached hereto as Exhibit 1); *see also In re Netflix Privacy Litig.*, No. 11-cv-00379-EJD (Dkt. 59) (N.D. Cal. 2011) (appointed Interim Class Counsel in adversarial leadership dispute, during which the court noted that the Edelson "firm's significant and particularly specialized expertise in … class actions, renders them superior to represent the putative class"); *Harris v. comScore*, No. 11-cv-5807, 2013 WL 1339262 (Dkt. 186) (N.D. Ill. Apr. 2, 2013) (achieving adversarial certification in the largest-ever privacy related class action). Moreover, proposed class counsel have already diligently investigated and

9

dedicated substantial resources to the investigation of the claims at issue in this action, and they will continue to do so throughout its pendency.

### E.   The Proposed Class Meets the Requirements of Rule 23(b)(3).

Plaintiff also seeks certification of the Class under Rule 23(b)(3), which provides that a class action may be maintained where (1) the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As discussed below, this case easily meets both of these requirements.

### i.   Common Questions of Law and Fact Predominate.

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 273 (4th Cir. 2010) (quoting *Klay v. Humana, Inc.,* 382 F.3d 1241, 1255 (11th Cir. 2004)). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Gray v. Hearst Commc'ns, Inc.*, 444 F. App'x 698, 701 (4th Cir. 2011) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S. Ct. 2231, 2231 (1997)). And when a court is "[d]eciding whether common questions predominate over individual ones," the inquiry is "qualitative, rather than quantitative." *Singleton*, 976 F. Supp. 2d at 677 (citing *Gunnells v. Healthplan Servs., Inc.,* 348 F.3d 417, 429 (4th Cir. 2003)).

Here, the claims of Plaintiff and the other members of the Class and Subclass all arise from Defendant's standardized conduct of obfuscating its unlawful game of chance within Game of War. (Compl. ¶ 2.) Thus, the common questions described in section III.B, *supra*,

predominate over any issues affecting only individual Class members (*e.g.*, the total amount of damages and losses suffered by each individual Class member). Moreover, the evidence necessary to prove Plaintiff's and the Class's and Subclass's claims—including evidence of the functionality of Game of War's Casino, the identity of Class and Subclass members, and the total amount wagered by each individual—will come from within Defendant's own records rather than from individual Class and Subclass members themselves. Thus, the claims at issue in this case present numerous common and predominant issues for the Class and Subclass and are subject to generalized proof. As such, the predominance requirement is also satisfied.

ii.    The Class Action Mechanism is Superior to Other Available Methods for the Litigation of this Matter.

Rule 23(b)(3) further requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P 23(b)(3). The instant class action is superior to other available methods for the fair and efficient adjudication of Plaintiff's and the Class's and Subclass's claims.

Absent class treatment in this case, each individual member of the Class and Subclass would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. (Compl. ¶ 50.) Such a result would be neither efficient nor fair to anyone, including Defendant. (*Id.*) Moreover, there is no indication that members of the Class and Subclass have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages and losses likely to be recovered relative to the resources required to prosecute such an action. (*Id.*) Furthermore, class certification will promote consistency of rulings and judgments, giving all parties the benefit of finality. (*Id.*)

11

Accordingly, the superiority requirement is satisfied as well.

## IV.    CONCLUSION.

For the foregoing reasons, Plaintiff Mia Mason, individually and on behalf of the proposed Class and Subclass, respectfully requests that the Court:

1.    Enter and reserve ruling on her Motion for Class Certification;

2.    Allow for and schedule discovery to take place on class-wide issues;

3.    Grant Plaintiff leave to file a memorandum in support of her Motion for Class Certification upon the conclusion of class-wide discovery;

4.    Grant Plaintiff's Motion for Class Certification after full briefing of the issues presented herein; and

5.    Provide all other and further relief that the Court deems equitable and just.[2]

Respectfully submitted,

**MIA MASON**, individually and on behalf of all others similarly situated,

Dated: April 17, 2015            By:    /s/Maria C. Simon
                                         One of Plaintiff's Attorneys

                                 Maria C. Simon
                                 MD Bar Number 17238
                                 msimon@thegellerlawgroup.com
                                 THE GELLER LAW GROUP
                                 4000 Legato Road, Suite 1100
                                 Fairfax, Virginia 22033
                                 Tel: 703.679.7067
                                 Fax: 703.259.8584

---

[2]    Plaintiff respectfully reserves the right to amend the putative Class and Subclass definitions at the conclusion of class-wide discovery, subject to Court approval.

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Amir C. Missaghi*
amissaghi@edelson.com
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro Hac Vice* admission to be sought