## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MIA MASON, individually, and on behalf of all others similarly situated, | : : : | |
| **Plaintiff,** | : : | |
| v. | : : | CIVIL ACTION NO. 1:15-cv-01107-JKB |
| MACHINE ZONE, INC., | : : | |
| **Defendant.** | : : | **Oral Argument Requested** |

## DEFENDANT MACHINE ZONE, INC.'S BRIEF
## IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Thomas D. McSorley (D. Md. #18609)
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, D.C. 20004

Sean Morris (*pro hac vice motion pending*)
Arnold & Porter LLP
44th Floor, 777 South Figueroa Street
Los Angeles, CA  90017-5844

Michael A. Berta (*pro hac vice motion pending*)
Arnold & Porter LLP
10th Floor, Three Embarcadero Center
San Francisco, CA  94111-4024

*Attorneys for Defendant*
*Machine Zone, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ..................................................................................................................... 6

    I.     PLAINTIFF LACKS STANDING TO ENFORCE CALIFORNIA PENAL CODE SECTION 330b AND THEREFORE COUNT I MUST BE DISMISSED. ................................................................................................ 6

    II.    PLAINTIFF'S CLAIM THAT MACHINE ZONE IS LIABLE UNDER THE UCL FOR "UNLAWFUL" VIOLATION OF SECTION 330b FAILS ................ 7

        A.    Plaintiff's UCL Claim Fails Because GoW Does Not Violate Section 330b........................................................................................................... 8

            *1.*    *GoW Is Not A "Slot Machine Or Device."* ..................................... 9

            *2.*    *GoW Is "Predominantly A Game Of Skill."* ................................. 11

        B.    Plaintiff Lacks Standing Under the UCL Because She Has Suffered No Injury Or Loss. .......................................................................................... 13

        C.    Plaintiff, A Non-California Resident, Lacks Standing To Bring A Claim Under California's UCL.............................................................................. 15

        D.    Allowing Recovery Of Plaintiff's Alleged Losses Would Violate California's Public Policy Against Permitting A Party To Recover Gambling Losses................................................................................... 17

    III.    PLAINTIFF'S CLAIM UNDER THE MARYLAND LOSS RECOVERY STATUTE FAILS............................................................................................. 17

        A.    Plaintiff Has Suffered No "Loss of Money" Entitling Her To Recovery. 18

        B.    Plaintiff Cannot State A Claim Under Maryland's Loss Recovery Statute Because GoW Is Not A "Gaming Device" Prohibited Under The Statute. ............................................................................................. 19

    IV.    PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS ........................ 20

CONCLUSION................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC,*
  929 F. Supp. 2d 502 (D. Md. 2013) .......................................................................... 21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................ 6, 15

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..................................................................................................... 5

*Bender v. Arundel Arena, Inc.,*
  236 A.2d 7 (Md. 1967) ............................................................................................... 18

*Cates v. State,*
  320 A.2d 752 (Mc. Ct. Spec. App. 1974) ............................................................ 18, 22

*Chaset v. Fleer/Skybox Int'l,*
  300 F.3d 1083 (9th Cir. 2002) ................................................................................... 15

*Comet Theatre Enterprises, Inc. v. Cartwright,*
  195 F.2d 803 (9th Cir. 1952) ..................................................................................... 21

*E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,*
  637 F.3d 435 (4th Cir. 2011) ....................................................................................... 3

*Ellis v. City of San Diego,*
  176 F.3d 1183 (9th Cir. 1999) ..................................................................................... 7

*Gunawan v. Howroyd-Wright Emp't Agency,*
  997 F. Supp. 2d 1058 (C.D. Cal. 2014) ....................................................................... 7

*Huntington v. Attrill,*
  146 U.S. 657 (1892) ................................................................................................... 16

*In re MasterCard Int'l Inc.,*
  313 F.3d 257 (5th Cir. 2002) ..................................................................................... 14

*In re Smith,*
  77 B.R. 33 (D. Md. 1987) ........................................................................................... 18

*In re Toyota Motor Corp.,*
  785 F. Supp. 2d 883 (C.D. Cal. 2011) ....................................................................... 16

*Irving v. Lennar Corp.*,
No. CIV S-12-290 KJM EFB, 2013 WL 1308712 (E.D. Cal. Apr. 1, 2013) ............................ 8

*Johnson v. Mitsubishi Digital Elecs. Am., Inc.*,
365 F. App'x 830 (9th Cir. 2010) ........................................................................... 13

*Kelly v. First Astri Corp.*,
72 Cal. App. 4th 462 (1999) ................................................................................. 17

*Kramer v. Bally's Park Place, Inc.*,
535 A.2d 466 (Md. 1988) ...................................................................................... 18

*Kwikset Corp. v. Superior Court*,
51 Cal.4th 310 (2011) .......................................................................................... 13

*Las Vegas Hacienda, Inc. v. Gibson*,
359 P.2d 85 (Nev. 1961) ...................................................................................... 20

*Lectrodryer v. SeoulBank*,
77 Cal. App. 4th 723 (2000) ................................................................................. 21

*Lu v. Hawaiian Gardens Casino, Inc.*,
50 Cal. 4th 592 (2010) .......................................................................................... 6

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
18 F. Supp. 3d 662 (D. Md. 2013), *reconsideration denied* (Dec. 30, 2013) ........................... 15

*Moradi-Shalal v. Fireman's Fund Ins. Cos.*,
46 Cal. 3d 287 (1988) ........................................................................................... 6

*Mould v. NJG Food Serv. Inc.*,
No. JKB-13-1305, 2014 WL 2768635 (D. Md. June 17, 2014) ............................................. 21

*Norwest Mortg., Inc. v. Superior Court of San Diego Cty.*,
72 Cal. App. 4th 214 (1999) ................................................................................. 16

*Papasan v. Allain*,
478 U.S. 265 (1986) ............................................................................................. 6

*People ex rel. Green v. Grewal*,
Nos. S217896, S217979, 2015 WL 3893494 (Cal. June 25, 2015) ................................... 10, 11

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) ........................................................................... 14, 22

*Philips v. Pitt Cnty. Mem'l Hosp.*,
572 F.3d 176 (4th Cir. 2009) ................................................................................. 3

*Prakashpalan v. Engstrom, Lipscomb & Lack,*
    223 Cal. App. 4th 1105 (2014) ............................................................. 8

*Redmond v. San Jose Police Dep't,*
    No. 14-cv-02345-BLF, 2015 WL 2337874 (N.D. Cal. May 14, 2015) ..................... 7

*Salamon v. Taft Broad. Co.,*
    16 Ohio App. 3d 336 (1984) .............................................................. 17

*Sharpensteen v. Hughes,*
    162 Cal. App. 2d 381 (1958) ............................................................. 12

*Speyer v. Avis Rent a Car Sys., Inc.,*
    415 F. Supp. 2d 1090 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th Cir. 2007) ................... 16

*Stanley v. California State Lottery Comm'n,*
    No. C041034, 2003 WL 22026611 (Cal. Ct. App. Aug. 29, 2003) ......................... 22

*State v. GNLV Corp.,*
    834 P.2d 411 (Nev. 1992) ................................................................ 20

*Tidenberg v. Bidz.com, Inc.,*
    No. CV 08-5553 PSG (FMOx), 2009 WL 605249 (C.D. Cal. Mar. 4, 2009) .................. 15, 16

*United States v. Lawson,*
    677 F.3d 629 (4th Cir. 2012) ............................................................ 19

*Veney v. Wyche,*
    293 F.3d 726 (4th Cir. 2002) ........................................................... 6, 15

*Vikco Ins. Servs., Inc. v. Ohio Indem. Co.,*
    70 Cal. App. 4th 55 (1999) ............................................................... 6

*Wallace v. Opinham,*
    73 Cal. App. 2d 25 (1946) ............................................................... 17

*Williams v. Justice Court, Oroville Judicial Dist. of Butte Cnty.,*
    230 Cal. App. 2d 87 (1964) .............................................................. 12

**Statutes, Rules and Regulations**

Md. Code Ann., Crim. Law
    § 12-101(d)(1)(ii) ....................................................................... 19
    § 12-102 ................................................................................. 20
    § 12-103 ................................................................................. 20
    § 12-110 ................................................................................. 17
    § 12-110(a) ........................................................................... 18, 19

Cal. Penal Code
§ 330 ................................................................................................... 7
§ 330b ..................................................................................... *passim*
§ 330b(a) ......................................................................................... 8, 9
§ 330b(d) ......................................................................................... 9, 11
§ 330b(f) ..................................................................................... 9, 11, 13

## Other Authorities

CAL. JUR. 3D CRIMINAL LAW: CRIMES AGAINST THE PERSON § 901 (2015) ................................ 12

## PRELIMINARY STATEMENT

Defendant Machine Zone, Inc. ("Machine Zone") is the maker of the wildly popular Game of War: Fire Age ("GoW") video game that can be downloaded and played *entirely for free* to an individual's Apple, Android or Amazon Fire mobile device.  Once the software is downloaded and installed on the device, the individual can start the game and be connected to a persistent on-line world in which they can interact with other players around the globe.  GoW is a game of strategy and skill that involves players attempting to build powerful empires by making alliances with other players, obtaining advantageous combinations of myriad resources (such as building materials, weapons, troops, and virtual "Gold"), and deciding when, if, and how to attack enemy players and monsters.  GoW enjoys worldwide popularity due in part to its built-in translator, which allows players from all over the world to communicate, form alliances, and battle other kingdoms and players.

Although GoW is entirely free to play, players can choose to try to advance their position in the game faster by spending real world money for virtual Gold and other resources.  But the virtual Gold is not actual currency.  Once it is purchased, the player has no right to convert it back into real money.  Instead, it is a resource or tool for a player to utilize solely within the context of GoW to obtain other in-game resources (which also cannot be converted back to money).

Plaintiff Mia Mason, putatively on behalf of GoW players throughout Maryland and the rest of the country, attempts to cash in on Machine Zone's success by taking one interactive feature of GoW—called the "Casino"—out of context and in isolation, and apply statutes designed to prosecute illegal gambling halls to recover what she describes as "gambling losses." Plaintiff cannot state a claim.

1

- *First*, Count I, which asserts a violation of California Penal Code § 330b ("Section 330b") prohibiting unlawful "slot machines or devices," fails because Section 330b does not provide for a private right of action.

- *Second*, Count II, which alleges a derivative claim under California's Unfair Competition Law ("UCL") based on the alleged violation of Section 330b, fails because Plaintiff does not and cannot plead facts that would show that GoW is a "slot machine or device" under Section 330b.  And, regardless, Plaintiff lacks standing to bring a claim under the UCL because she has suffered no loss and is not a California resident.

- *Third*, Plaintiff's claim under Maryland's gambling loss recovery statute fails because Plaintiff does not and cannot plead that GoW is an illegal gaming device under Maryland law and, in any event, Plaintiff has sustained no recoverable loss.

- *Finally*, since there has been no underlying wrongdoing and the facts pled by Plaintiff demonstrate that she received the benefit of her bargain and suffered no loss, Plaintiff cannot state a claim for unjust enrichment.

## STATEMENT OF FACTS

Game of War is an extremely popular mobile strategy game available on Apple, Android and Amazon mobile devices, in which players create virtual towns and armies, and battle other GoW players.  Compl. ¶ 1.  The goal of GoW is to become as powerful as possible, through improvement of  kingdoms and hero avatars, which occurs by accumulation and strategic use of virtual resources within the game, such as wood, "Gold," and stone.  Compl. ¶¶ 1, 28.  Achieving success in GoW takes a combination of skill, endurance, and dedication, as it can take many hours, days, and even months to build enough power to compete effectively.  Compl. ¶¶ 2, 28.

The complicated nature of the strategy involved in GoW is revealed in the screenshots and material Mason cites in the Complaint.[1]  For example, the Complaint cites the website "www.gowfacentral.com," Compl. ¶ 12 n.14, which is a fan site "dedicated to bringing you news, tips, tricks, and strategies that will give you an edge in the game as well as to provide you with tools to test our [sic] your hero skill tree builds and an item search database."  *See About*, GOWFA CENTRAL, http://www.gowfacentral.com/about/ (last visited June 29, 2015) (printout attached hereto as Exhibit 1).  As reflected on that site, GoW is "a real time strategy game" in which players "build [an] empire consisting of resource plots, support buildings, four types of troops, and your Hero" by "gain[ing] more skill points for further customization."  *Id.*  Screenshots from the game similar to those cited by Plaintiff also show the strategic nature of the game:

  

---

[1] In ruling on a motion to dismiss, the Court may consider facts taken from "documents attached or incorporated into the complaint," *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011), as well matters of public record.  *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

  

GoW operates on a "free-to-play" model, meaning that the game can be downloaded and played on a user's device entirely for free.  Compl. ¶¶ 2, 10, 19.  While not required for game play, some players who prefer to advance through the game more rapidly can choose to acquire various virtual resources such as wood, stone, and Gold using real world currency by making an "in-app" purchase via their respective app store.  Compl. ¶¶ 2, 20.

One portion of the GoW world is the "Casino," where players can exchange virtual "Chips" for a variety of other in-game resources.  Compl. ¶¶ 22, 28.  Players can obtain virtual Chips by multiple means, including by exchanging virtual Gold, which players can obtain either for free throughout the game or for purchase from their app store.  Comp. ¶¶ 20-21.  Although referred to as a "Casino," the GoW Casino is unlike a real world casino in that GoW players never lose and no "house" ever wins.  Instead, as Plaintiff concedes, each "spin" always results in the player being awarded one of the prizes shown on the screen.  Compl. ¶ 27.  Such prizes range from resources that can be used in various aspects of game play, such as wood or stone, to additional Chips, to Gold that can be used throughout the game in various capacities.  Compl. ¶ 28.

4

Moreover, unlike a real world casino, GoW players cannot "cash out" the virtual Chips or Gold for real world money.  While some active players have attempted to sell their accounts on a secondary market, any secondary market exists entirely outside of GoW and is expressly prohibited by the GoW terms of service.  Compl. ¶ 38; Compl. Ex. A ¶ 14(d).  As the terms of service state, "Virtual Currency" (*i.e.*, Gold) and "Virtual Goods" may "never be redeemed for 'real world' money, goods or other items of monetary value from Machine Zone or any other person."  Compl. Ex. A ¶ 14(b).  By purchasing the Gold or other virtual goods in GoW, a player obtains only a "revocable license" to use the items within GoW and "solely for [the player's] personal non-commercial entertainment purposes."  *Id.*  If a player attempts to convert any virtual good (including Gold) purchased within GoW back into actual currency, Machine Zone can simply eliminate the virtual good and even suspend or permanently ban the player.  *Id.* ¶ 14(d), (e).

Given GoW's tremendous popularity, success, and visibility—it is one of the top-grossing apps in both the Apple and Android platforms and the subject of a high-profile advertising campaign that premiered during the 2015 Super Bowl with the largest viewership in history—it is telling that no state or municipality has ever prosecuted Machine Zone under any state or local gambling law.  Comp. ¶ 18.  Nevertheless, Plaintiff brings this unprecedented action in the hopes of turning inapplicable criminal statutes into profit for herself.  As discussed below, Plaintiff cannot state any claim for relief, and the Complaint should be dismissed in its entirety with prejudice.

## LEGAL STANDARD

A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  The Court is not required to accept as true "a legal conclusion

couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations

that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *Veney*

*v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation omitted).  Nor does the pleading standard

under the Federal Rules "unlock the doors of discovery for a plaintiff armed with nothing more

than conclusions." *Iqbal*, 556 U.S. at 678-79.

## ARGUMENT

### I.     PLAINTIFF LACKS STANDING TO ENFORCE CALIFORNIA PENAL CODE SECTION 330b AND THEREFORE COUNT I MUST BE DISMISSED.

In Count I, Plaintiff purports to bring a claim on behalf of herself and others under

Section 330b of the California Penal Code, which makes it unlawful for any person to

"manufacture, repair, own, store . . . any slot machine or device" as defined in that section.  Cal.

Penal Code § 330b.  However, the California Penal Code—a criminal statute enforced by the

State of California—does not provide a private right of action entitling Plaintiff to sue under it.

A private citizen can bring a claim under a statute "only if the language of the statute or

its legislative history clearly indicates the Legislature intended to create such a right . . . ." *Vikco*

*Ins. Servs., Inc. v. Ohio Indem. Co.*, 70 Cal. App. 4th 55, 62 (1999).  Indeed, courts "begin with

the premise that a violation of a state statute does not necessarily give rise to a private cause of

action," and "whether a party has a right to sue depends on whether the Legislature has

'manifested an intent to create such a private cause of action' under the statute." *Lu v. Hawaiian*

*Gardens Casino, Inc.*, 50 Cal. 4th 592, 596, 603 (2010) (*citing Moradi-Shalal v. Fireman's Fund*

*Ins. Cos.*, 46 Cal. 3d 287, 305 (1988)); *see also Gunawan v. Howroyd-Wright Emp't Agency*, 997

F. Supp. 2d 1058, 1068 (C.D. Cal. 2014) ("[I]f the Legislature intends to create a private right of

action, it will do so 'directly,' and 'in clear, understandable, unmistakable terms.'"); *Redmond v.*

*San Jose Police Dep't*, No. 14-cv-02345-BLF, 2015 WL 2337874, at *2 (N.D. Cal. May 14,

2015) (finding that "a review of the penal code sections identified by Plaintiff reveals no express

private rights of action"); *Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999)

(holding that the district court properly dismissed claims under the California Penal Code

because the statutes do not create enforceable individual rights).

As can be seen by a complete review of Section 330b, and indeed all of Section 330 of

the California Penal Code, there is no reference to any private right of action under Section 330.

*See* Ex. 2 (attached hereto).  Nor has Plaintiff pleaded or indicated any other statutory basis for

asserting a direct claim for Section 330b.  Machine Zone also is unaware of any Section 330 case

successfully brought by a private individual.  In the absence of any private right of action,

Plaintiff's claim under the California Penal Code must be dismissed.  Further, as discussed

below, even if there were a private right of action under Section 330b, Plaintiff's claim would

fail because Plaintiff has not stated a claim for a violation of the statute.

## II.      PLAINTIFF'S CLAIM THAT MACHINE ZONE IS LIABLE UNDER THE UCL FOR "UNLAWFUL" VIOLATION OF SECTION 330b FAILS

In Count II, Plaintiff attempts to do indirectly what she cannot do directly, alleging that

Machine Zone violates California's Unfair Competition Law ("UCL") through the "unlawful"

violation of Section 330b.  Count II fails for multiple reasons.

First, Plaintiff's claim fails because she cannot plead that GoW is a "slot machine or

device" under the Criminal Code and thus is "unlawful."  Count II fails for the additional reasons

that (1) Plaintiff fails to allege (and indeed could not allege) any injury or loss necessary to

confer standing under the UCL; (2) as a Maryland resident, Plaintiff lacks standing to assert a

claim under California's UCL; and (3) permitting Plaintiff to recover her supposed "gambling losses" would be in direct contravention of the California Penal Code and against California's public policy.

**A.     Plaintiff's UCL Claim Fails Because GoW Does Not Violate Section 330b.**

The only basis for Plaintiff's UCL claim is that Machine Zone engaged in "unlawful" conduct by violating Section 330b.  Compl. ¶ 64.  Where a party seeks to borrow from another statute to allege a violation of the UCL, as Plaintiff does here, she must "allege facts sufficient to show a violation of [the] underlying law."  *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1133 (2014).  "Because the [UCL] borrows violations of other laws, a failure to state a claim under the 'borrowed statute' translates to a failure to state a claim under the unlawful prong of the UCL."  *Irving v. Lennar Corp.*, No. CIV S-12-290 KJM EFB, 2013 WL 1308712, at *15 (E.D. Cal. Apr. 1, 2013).  But GoW does not violate Section 330b because it does not meet the definition of the gambling devices regulated by that statute.

Section 330b governs "slot machines or devices," making it unlawful "to manufacture, . . . sell, rent, or lease . . . or permit the operation . . . or keeping of" such devices. Cal. Penal Code § 330b(a).  A "slot machine or device" is defined in subsection (d) of Section 330b as:

> a machine, apparatus, or device that is adapted, or may readily be
> converted, for use in a way that, as a result of the insertion of any
> piece of money or coin or other object, or by any other means, the
> machine or device is caused to operate or may be operated, and by
> reason of any element of hazard or chance or of other outcome of
> operation unpredictable by him or her, the user may receive or
> become entitled to receive any piece of money, credit, allowance,
> or thing of value, or additional chance or right to use the slot
> machine or device, or any check, slug, token, or memorandum,
> whether of value or otherwise, which may be exchanged for any
> money, credit, allowance, or thing of value, or which may be given
> in trade, irrespective of whether it may, apart from any element of
> hazard or chance or unpredictable outcome of operation, also sell,

>   deliver, or present some merchandise, indication of weight,
>   entertainment, or other thing of value.

Cal. Penal Code § 330b(d) (emphasis added).

The scope of a "slot machine or device" under this subsection, is expressly further narrowed by subsection (f) of Section 330b, which excludes from "slot machines or devices" any "[p]inball and other amusement machines or devices, which are predominantly games of skill." Cal. Penal Code § 330b(f).

Here, Plaintiff has not and cannot plead that GoW is a "slot machine or device" under the main definition of subsection (d) of Section 330b.  And, even if it were, Plaintiff's claim fails by operation of subsection (f) of Section 330b.

### 1.   GoW Is Not A "Slot Machine Or Device."

GoW is a gaming app that is downloaded onto a third party mobile device such as an iPhone or Android tablet.  Compl. ¶ 1.  As such, it meets none of the requirements of the "slot machine or device" definition.  Section 330b is directed to persons that "manufacture, repair, own, store, [etc.]" a "slot machine or device," which—as the terms imply—must in fact be "a machine, apparatus, or device."  Cal. Penal Code § 330b(a), (d).

Here, it is indisputable that GoW is not a "machine, apparatus or device."  It is software downloaded to an individual's Apple or Android device.  *See* Compl. ¶ 54 (explaining that GoW is "installed on mobile devices (*e.g.*, Apple iPhones or iPads) to operate as <u>discrete terminals</u> where players can wager").  Even if Plaintiff were correct that GoW, once downloaded onto a user's own device, constituted a type of illegal gambling (which it does not), it would be the user's <u>device itself</u> that was made unlawful under Section 330b(a).  Indisputably, Machine Zone does not make the user devices onto which its software (along with countless other software) can

be installed, and there is no cognizable reading of Section 330b that would reach a software

developer whose software was only installed onto the devices of others.

A very recent decision by the California Supreme Court confirms this.  In *People ex rel.*

*Green v. Grewal*, Nos. S217896, S217979, 2015 WL 3893494 (Cal. June 25, 2015), law

enforcement officials brought charges against operators of "Internet cafés" for violation of

Section 330b.  Customers could visit the cafés and purchase magnetic cards or "PIN" numbers,

which granted the customers Internet access time.  *Id.* at *1.  Those magnetic cards or PIN

numbers also corresponded to "points" that the customer could "redeem" for entry into various

instant "sweepstakes" draws, which provided the customer the chance to win money.  *Id.* at *1,

4-5.  To redeem the purchased points on the cards/PIN to play the sweepstakes, a customer could

simply ask a café worker if their magnetic cards or PIN matched with a "win" in the

sweepstakes, or the customer could enter the card/PIN at a computer terminal set up with casino

style games.  *Id.* at *1, 3.  The results of the sweepstakes were no different for the customer; the

customer won (or lost) the same amount of money whether he simply asked or played the

computer game because the outcome of the computer game was predetermined based on the code

on the card/PIN.  *Id.* at *3-4.

In holding that the machines at issue violated Section 330b, the Court made clear that that

statute is intended to apply to actual wrongful "devices."  As the Court concluded:

> [W]e think the core elements of section 330b, subdivision (d), can
> be distilled as follows: A *device* that (1) rewards purchasers of
> usable products, including but not limited to, telephone and
> Internet time, with sweepstakes points, and (2) allows those
> purchasers to redeem their sweepstakes points by playing games
> that award cash or other prizes of value, is a slot machine, *where*
> *that device*, (3) standing alone or used in conjunction with other
> electronic or mechanical components, (4) when operated by
> insertion of a PIN, account number, or magnetic card, or by any
> other means, (5) awards cash or other prizes of value to users, or

> entitles those users to such cash or other prizes of value, and (6)
> does so by arranging or prearranging winning sweepstakes entries
> in a manner that is unpredictable to the user.

*Id.* at \*11 (emphasis added).  It thus was not the software or computer program that might violate Section 330b, but rather the actual machine or device, so long as all the other elements are met as well (which, here, they are not).

Indeed, it also is not in dispute that no player "insert[s] any piece of money or coin or other object" into an Apple or Android device with GoW installed, nor is GoW "caused to operate" by the insertion of any "piece of money or coin" (or payment "by any other means" either) since GoW operates entirely for free.  Cal. Penal Code § 330b(d); Compl. ¶ 2 ("the game is free to play").  GoW thus does not meet the definition set forth by the plain language in Section 330b for "slot machines or devices" for this additional reason, and it would be improper to stretch the definition of this criminal statute more broadly.

Because Machine Zone only provides software, and software (particularly that which is free to play) cannot meet the terms of Section 330b, which is designed to prohibit gambling parlors from offering the gaming "machines" and "devices" one might find there, Machine Zone's provision of GoW cannot be a violation of Section 330b.

### 2.       GoW Is "Predominantly A Game Of Skill."

Plaintiff's claim under Section 330b fails for another reason:  Section 330b requires that the machines or devices at issue not be "predominantly games of skill."  As explained in Section 330b(f), "pinball and other amusement machines or devices, which are predominantly games of skill, whether affording the opportunity of additional chances or free plays or not, ***are not included*** within the term slot machine or device, as defined in this section."  Cal. Penal Code § 330b(f) (emphasis added).  The purpose of this requirement is so that games that require skill,

but that might have one aspect that could appear to include obtaining something of value based on chance, are not deemed illegal.

The primary examples of this are pinball machines that require skill on the part of the player (*e.g.*, using flippers at the right time to hit bumpers), but that might also include chances built into the game for "extra" balls or playtime (by, for example, having a "match" at the end of a pinball game that awards another free play).  *See Williams v. Justice Court, Oroville Judicial Dist. of Butte Cnty.*, 230 Cal. App. 2d 87, 95 (1964) (citing *Sharpensteen v. Hughes*, 162 Cal. App. 2d 381, 386-87 (1958)) ("[Section 330b] has been authoritatively construed to exclude pinball machines when they are predominantly games of skill rather than chance.").  But the exclusion is not limited to pinball machines.  *Any* "amusement machine or device" that is predominantly a game of skill does not meet the "artificial statutory definition," *see id.*, and "[i]t is the character of a game rather than a particular player's skill or lack of it that determines whether the game is one of chance or skill."  18 CAL. JUR. 3D CRIMINAL LAW: CRIMES AGAINST THE PERSON § 901 (2015).

Applying this exclusion shows that Plaintiff cannot maintain her claim that GoW is a "slot machine or device" by claiming that the "Casino" within GoW affords things of value when played.  First, as discussed above, Plaintiff's pleading and indisputable facts show that there is no dispute that GoW, as a whole, is a game of skill, not chance.  *See* Compl. ¶¶ 1, 28; Ex. 1.  For this reason, Plaintiff cannot maintain that GoW, installed on a user's phone or tablet, is a "slot machine or device."

Second, even if Plaintiff's pleading were not an admission that GoW as a whole is a game of skill, not chance, Plaintiff still would not sufficiently allege a Section 330b violation. Plaintiff pleads that the "Casino" is but one aspect of the actual game (which is GoW) but does

not contend or plead facts sufficient to show that GoW as a whole is an illegal "slot machine or device." Plaintiff's excising out of one specific feature of the game—the Casino—and, on that basis asserting that GoW is a "slot machine or device," is no more permitted by Section 330b than calling out the free replay feature of a pinball machine and, on that basis, claiming that pinball machines are a "slot machine or device." To find otherwise would render subsection (f) meaningless. Indeed, were Plaintiff's reading of Section 330b correct, Plaintiff herself would violate Section 330b by possessing a device with GoW installed, and, arguably, so too would device manufacturers by selling devices onto which GoW could be installed. Accordingly, because Plaintiff does not and cannot plead that GoW as a whole is not predominantly a game of skill, Plaintiff's claim, which rests solely on one feature of the game, fails as a matter of law.

In sum, because Plaintiff fails to demonstrate that GoW is a slot machine or device under section 330b or that Machine Zone has violated any provision of the California Penal Code whatsoever, Plaintiff's claim under the UCL must necessarily fail as well. Count II should be dismissed accordingly.

**B.** **Plaintiff Lacks Standing Under The UCL Because She Has Suffered No Injury Or Loss.**

In addition to Plaintiff's failure to plausibly allege that Machine Zone violated Section 330b, her UCL claim also fails because she has suffered no cognizable injury or loss and thus lacks standing to sue under the UCL. To establish standing under the UCL, a plaintiff must "establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 322 (2011). And, where "one gets the benefit of [her] bargain, [she] has no standing under the UCL" because no economic injury has occurred. *Johnson v. Mitsubishi Digital Elecs. Am., Inc.*, 365 F. App'x 830, 832 (9th Cir. 2010) (collecting cases). Even if a statutory violation may have occurred, if there is

no attendant injury or loss to the private plaintiff, there is no standing under the UCL.  *See*

*Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008) (noting that "the existence of a

cause of action does not answer the question of who has standing to bring the claim").

Plaintiff's Complaint affirmatively shows she did <u>not</u> suffer any injury in fact as a result

of the purported illegal gaming within GoW.  As Plaintiff alleges, before spending any money at

all, she visited the Casino and obtained resources shown on the screen by playing with

"complimentary" Chips.  Compl. ¶ 43.  Thus having played in the Casino and learned how it

works, she thereafter purchased virtual Gold that she could use for any number of items in GoW,

including what she refers to as "benign uses" such as obtaining resources like wood and stone.

Compl. ¶¶ 2, 43.  Indeed, part of the strategy involved in the game is deciding where to spend

(and not spend) virtual Gold either purchased or otherwise earned in the game.  And, having

purchased the Gold, Plaintiff made a choice to convert her real world money into a virtual

resource within the game—a virtual resource that she had no right ever to change back into

actual currency (either directly or indirectly).  Compl. Ex. A ¶ 14 (a), (d), (e).

She then chose to expend that virtual Gold resource on additional Chips to be used at the

Casino, where she (like any player who visits the Casino) always received something of value

within the game.  Compl. ¶ 43; *see also* Compl. ¶ 27 ("The consumer is <u>awarded</u> whatever <u>prize</u>

the animated light lands on").  In other words, Plaintiff received the benefit of her bargain:  she

decided to use her real money to buy virtual Gold (which could not revert back to "real money"),

she traded the virtual Gold resources for another virtual resource (the Chips), and then she played

a game within a game in which those Chips were further exchanged for other resources.  This is

not gambling, but even if it were, Plaintiff suffered no cognizable loss.  *See In re MasterCard*

*Int'l Inc.*, 313 F.3d 257, 264 (5th Cir. 2002) (voluntarily gambling does not result in cognizable

economic injury, since the player "got exactly what they bargained for"); *see also Chaset v. Fleer/Skybox Int'l*, 300 F.3d 1083, 1086-87 (9th Cir. 2002) (where plaintiffs purchased packs of baseball cards not knowing whether they contained valuable cards or just lower-level players, plaintiffs did not suffer "injury to property" since they received the "benefit of their bargain").[2]

### C.   Plaintiff, A Non-California Resident, Lacks Standing To Bring A Claim Under California's UCL.

Plaintiff's UCL claim fails for the additional reason that a non-California resident lacks standing to bring a claim under California's UCL absent a showing that either her alleged injury or the allegedly unlawful conduct occurred in California.  "If neither of these questions can be answered in the affirmative, then Plaintiff will be unable to avail herself of [the UCL]." *Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553 PSG (FMOx), 2009 WL 605249, at *4 (C.D. Cal. Mar. 4, 2009).  The same holds true in Maryland:  "California's unfair competition law (UCL) does not apply to nonresidents where the allegedly wrongful conduct occurred outside California."  *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 18 F. Supp. 3d 662, 672 (D. Md. 2013), *reconsideration denied* (Dec. 30, 2013).

While Machine Zone disputes that Plaintiff has suffered any injury whatsoever, if anything, her purported "gambling losses" would have occurred in Maryland, where Plaintiff accessed GoW on her own mobile device (the alleged "slot machine").  *See Tidenberg*, 2009 WL 605249, at *4 (holding, for the purposes of a false advertising claim involving an online

---

[2] Plaintiff's conclusory allegation that she "lost money" is not only (a) insufficient under *Iqbal*, 556 U.S. at 678-79, and *Veney*, 293 F.3d 726, and (b) contradicted by her own description of the transaction, but it also cannot be credited where she concedes that she always received something in exchange for the money she spent.  Because Plaintiff concedes that she always won something, it is not surprising that she is unable to identify the amount she claims to have actually lost or the amount of Gold and Chips she claims to have used at the Casino, as opposed to throughout the game for many other purposes.  *See* Compl. ¶ 43 (alleging only that she lost some unidentified amount of "more than $100").  Plaintiff's inability to allege such basic facts renders her allegation that she lost money implausible and fatally deficient.

purchase, that the injury occurred where plaintiff accessed the allegedly false website, presumably where the plaintiff resides); *Speyer v. Avis Rent a Car Sys., Inc.*, 415 F. Supp. 2d 1090, 1099 (S.D. Cal. 2005), *aff'd*, 242 F. App'x 474 (9th Cir. 2007) ("[T]o the extent Plaintiffs claim they were injured by unfair concession fee *charges*, any injury suffered may have occurred out-of-state where the rental vehicle was located and the transaction was completed.").

Thus, because Plaintiff fails to allege that her injury occurred in California, the viability of Plaintiff's UCL claim depends on her ability to demonstrate that Machine Zone's allegedly unlawful conduct took place there. *Norwest Mortg., Inc. v. Superior Court of San Diego Cty.*, 72 Cal. App. 4th 214, 224-25, 227 (1999); *Tidenberg*, 2009 WL 605249, at *4-5. Plaintiff makes no such allegation. Indeed, the fact that Plaintiff attempts to pursue a claim under the criminal law of Maryland undermines her ability to do so. Plaintiff cannot on the one hand claim that Machine Zone's conduct violates Maryland's criminal law, which necessarily only applies to conduct within the State of Maryland, while at the same time claiming that the allegedly unlawful conduct occurred in California in violation of California's Penal Code. *Cf. Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Crimes and offenses against the laws of any state can only be defined, prosecuted, and pardoned by the sovereign authority of that state; and the authorities, legislative, executive, or judicial, of other states take no action with regard to them."). Plaintiff cannot have it both ways and this irreconcilable tension highlights the deficiency in her UCL claim. Accordingly, because the UCL "cannot provide relief for non-California residents who cannot allege a sufficient connection to California," *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011), Count II must be dismissed for this reason as well.

**D.      Allowing Recovery Of Plaintiff's Alleged Losses Would Violate California's Public Policy Against Permitting A Party To Recover Gambling Losses.**

Even if Plaintiff could plausibly allege the existence of an unlawful slot machine or device and that she suffered a "loss," which she cannot, Plaintiff would be unable to recover her supposed losses in any event.  As discussed above, if any unlawful "slot machine or device" exists, it is in possession of Plaintiff herself.  *See supra* Section II.A.  It would therefore be Plaintiff who is in violation of Section 330b, and Plaintiff who is engaging in "illegal" gambling.

Plaintiff cannot recover under such circumstances.  California has a "strong policy against judicial resolution of civil claims arising out of gambling contracts or transactions" including "actions for recovery of gambling losses."  *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 488 (1999).  In short, "no California statute authorizes a party to an illegal transaction which is prohibited by law to recover gambling losses."  *Wallace v. Opinham*, 73 Cal. App. 2d 25, 27 (1946).  Plaintiff's attempt to recover her supposed losses is similarly prohibited here.

## III.     PLAINTIFF'S CLAIM UNDER THE MARYLAND LOSS RECOVERY STATUTE FAILS

In Count IV, Plaintiff seeks to recover under a provision of Maryland's criminal law with roots in 18th Century English law that allows one to recover "gambling losses," but only if she can show that she has "lost money" and that she has done so at an illegal "gaming device."  Md. Code Ann., Crim. Law § 12-110.  Laws such as the Maryland loss recovery statute (which does not even exist in California) were "born in a vanished era where [there was an] absence of an organized police authority to enforce criminal statutes" and thus have limited application in modern society where gambling is subject to substantial oversight and enforcement.  *Salamon v. Taft Broad. Co.*, 16 Ohio App. 3d 336, 341 (1984).  Given the anachronistic nature of the statute, it is not surprising that the last time a plaintiff in a reported case even *attempted* to use the Maryland loss recovery statute to recover gambling losses was nearly 50 years ago, in 1967.  *See*

17

*Bender v. Arundel Arena, Inc.*, 236 A.2d 7 (Md. 1967).  But even then, the plaintiff was unsuccessful because the conduct at issue took place at licensed gaming establishments, and the loss recovery statute does not apply where the gambling at issue is legal.  *Id.* at 15.[3]

Because Plaintiff has not "lost money" and GoW is a not a prohibited "gaming device," her attempt to resurrect this arcane and seldom-used statute to benefit herself should be denied with prejudice.

### A.    Plaintiff Has Suffered No "Loss of Money" Entitling Her To Recovery.

The loss recovery statute provides that "[a] person who *loses money at a gaming device* . . . may recover the money as if it were a common debt."  Md. Code Ann., Crim. Law § 12-110(a) (emphasis added).  By its very terms, then, a plaintiff must have actually lost money at a gaming device to recover anything.

As discussed above, however, neither Plaintiff nor any other player "loses money" through gambling in GoW.  Plaintiff converted her real world money for the virtual in-game resource of Gold.  At that point, the virtual Gold had no monetary value.  It could not be "re-converted" back to cash, nor exchanged for something else within GoW that could be converted back to money.  Plaintiff could use that in-game resource strategically to her advantage within the context of the Game, and even play at the Casino after converting the virtual Gold to virtual

---

[3] Since then, Machine Zone is aware of only three reported cases in any Maryland state or federal court even discussing the loss recovery statute, but none of those cases has any application here: two cases, *Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 471 (Md. 1988), and *In re Smith*, 77 B.R. 33, 34 (D. Md. 1987), address instances where a party seeks to enforce a gambling debt incurred in *another state*, where the gambling at issue is legal, and the third addresses whether a plaintiff can resort to "self-help" through armed robbery to recover his gambling losses, and is thus similarly unhelpful to Plaintiff.  *Cates v. State*, 320 A.2d 75, 82 (Mc. Ct. Spec. App. 1974).

Chips (which also could not be converted back into money). But in so doing she was not gambling money and thus could not lose money regardless of the outcome.[4]

Moreover, the outcome of the Casino was not like a "real world" casino, since the result was always a win. Compl. ¶ 79 (explaining that after players press the "spin" button and a selector box moves around the device, when it stops the consumer is *awarded prizes of varying degrees of value*); Compl. ¶ 80 (alleging that players are "award[ed] a prize"); Compl. ¶ 83 (again referencing being awarded prizes); *see also infra* Section II.B. Thus, Plaintiff has not alleged the essential element of a gambling <u>loss</u>, and Count IV must be dismissed for this reason.

### B.      Plaintiff Cannot State A Claim Under Maryland's Loss Recovery Statute Because GoW Is Not A "Gaming Device" Prohibited Under The Statute.

The Maryland loss recovery statute allows recovery only for gambling losses incurred at a "gaming device" prohibited under particular provisions of Maryland's criminal law. Md. Code Ann., Crim. Law § 12-110(a). A gaming device is defined as "a game or device at which money or any other thing or consideration of value is bet, wagered, or gambled." Md. Code Ann., Crim. Law § 12-101(d)(1)(ii). While there are no Maryland cases elaborating on the definitions of "bet" or "wager" as those terms are used in the loss recovery statute, the Fourth Circuit, in interpreting those same terms in a South Carolina gambling statute, found persuasive the view of the highest court of Nevada, "a state with particular interest, and familiarity with, gambling." *United States v. Lawson*, 677 F.3d 629, 654 (4th Cir. 2012). That Nevada court held that a

---

[4] Again, the GoW Terms of Service, attached to and referenced in Plaintiff's Complaint, expressly provide that "Virtual Currency and Virtual Goods may never be redeemed for 'real world' money, goods, or other items of monetary value from Machine Zone or any other person." Compl. Ex. A ¶ 14(b). The existence of an improper secondary market is of no consequence because Machine Zone expressly prohibits the buying or selling of any virtual currency in exchange for "real world" money or other items of value, *see id.* ¶ 14(d); the secondary market occurs completely outside of GoW with no involvement by Machine Zone whatsoever (and Plaintiff does not allege anything to the contrary); and in any event, Plaintiff does not allege that she ever attempted to or sold her GoW account on the secondary market.

"wager" exists where the prize or premium is not a fixed amount, but rather, depends on the number of entrants.  *Id.* (citing *Las Vegas Hacienda, Inc. v. Gibson*, 359 P.2d 85, 86 (Nev. 1961)).  Moreover, "[a] prize differs from a wager in that the person offering the prize must permanently relinquish the prize upon performance of a specified act[, but] *in a wager, each party has a chance of gain and takes a risk of loss*."  *State v. GNLV Corp.*, 834 P.2d 411, 412-13 (Nev. 1992) (emphasis added).

Here, no money or other thing of value has been "bet, wagered, or gambled."  Plaintiff used *virtual* Gold to obtain *virtual* Chips, which she exchanged for other *virtual* resources, all of which *virtual* materials have no monetary value to Plaintiff.  Even within the context of the *virtual* Casino game, she was assured to receive something of use for the game, and she knew what those potential items were.  This is not betting, wagering, or gambling as contemplated by the statute, and thus GoW cannot constitute a "gaming device" under the statute.[5]

## IV.   PLAINTIFF'S CLAIM FOR UNJUST ENRICHMENT FAILS

In Count III, Plaintiff claims a right to recovery based on the same set of facts that supports her UCL and Maryland loss recovery claims, yet she recasts them as a claim for unjust enrichment.  *Compare* Compl. ¶ 74 (under unjust enrichment, seeking "restitution of any money Defendant has retained as a result of the unlawful and/or wrongful conduct"), *with* Compl. ¶ 68 (under UCL, seeking an order "requiring Defendant to restore Plaintiff and each Class member any money acquired by means of unlawful and unfair competition (restitution)" *and* Compl. ¶ 84 (under Maryland loss recovery, seeking "full disgorgement and restitution of any money

---

[5] Indeed, if the Court were to accept Plaintiff's allegation that the GoW Casino is a gaming device, then Plaintiff and other Maryland residents she claims to represent would be guilty of a misdemeanor for playing.  *See* Md. Code Ann., Crim. Law § 12-103 (providing that anyone who plays at a gaming device for money is guilty of a misdemeanor); § 12-102 (stating that it is illegal for any person to "bet, wager, or gamble" and any person who does so is guilty of a misdemeanor).

Defendant has won from Plaintiff and the Subclass as a result of the unlawful and/or wrongful conduct alleged herein).

Although Plaintiff does not allege which state law governs her claim for unjust enrichment, her claim fails regardless of whether Maryland or California law applies.  Under Maryland law, a claim for unjust enrichment requires that a plaintiff  show: "(1) a benefit conferred upon the defendant by the plaintiff; (2) the defendant appreciated or knew about the benefit; and (3) the defendant accepted the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value."  *Mould v. NJG Food Serv. Inc.*, No. JKB-13-1305, 2014 WL 2768635, at *7 (D. Md. June 17, 2014).  California law similarly requires the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another."  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).

Here, there is nothing inequitable or unjust that would sustain Plaintiff's unjust enrichment claim where she got precisely what she bargained for.  *See Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 535 (D. Md. 2013) (noting that where plaintiff has "received everything that [she] bargained for, a necessary element justifying the remedy of restitution, *i.e.*, unjust enrichment, is lacking") (internal quotation omitted); *Comet Theatre Enterprises, Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected.").  Indeed, as demonstrated above, the fact that Plaintiff received the benefit of her bargain means that she sustained no loss or injury and therefore lacks standing under the UCL.  *See infra* Section II.B.  Permitting Plaintiff "to pursue [her] claim under the label 'unjust enrichment,'" would allow her to "circumvent the law and public policy reflected in [the UCL's] mandate that

only an injured plaintiff may assert a private right of action under the UCL." *Peterson*, 164 Cal.

App. 4th at 1595.

Moreover, to the extent Plaintiff attempts to recover under the Maryland loss recovery

statute, she cannot also seek the same relief through an unjust enrichment claim. *See Cates*, 320

A.2d at 82 (noting an intent by the legislature that the loss recovery statute "be the sole remedy

for the recovering of gambling losses"). And simply couching her claim as one for "unjust

enrichment" will not permit recovery under California law, where recovery of gambling losses is

against California public policy, regardless of what Plaintiff chooses to call it. *See Stanley v.*

*California State Lottery Comm'n*, No. C041034, 2003 WL 22026611, at *21 (Cal. Ct. App. Aug.

29, 2003) ("While plaintiff in this case seeks permission to articulate her claim as one for breach

of contract, she nonetheless attempts to recover her gambling losses incurred in what she charges

is an illegal banking game . . ."). Accordingly, Plaintiff's claim for unjust enrichment fails.

## <u>CONCLUSION</u>

Having failed to state any viable claim for relief, Plaintiff's Complaint must be dismissed.

Dated: June 29, 2015                              Respectfully submitted,

<div style="margin-left:40%">

_____/s/_____

Thomas D. McSorley (D. Md. #18609)
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, D.C. 20004
Tel: (202) 942-5668; Fax: (202) 942-5999
Tom.McSorley@aporter.com

Sean Morris (*pro hac vice motion pending*)
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5844
Tel: (213) 243-422; Fax: (213) 243-41999
Sean.Morris@aporter.com

Michael A. Berta (*pro hac vice motion pending*)
Arnold & Porter LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
Tel: (415) 471-3277; Fax: (415) 471-3400

</div>

Michael.Berta@aporter.com

*Attorneys for Defendant Machine Zone, Inc.*