**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| MIA MASON, individually, and on behalf of all others similarly situated, | Case No.: 1:15-cv-01107-JKB |
| *Plaintiff*, | |
| *v.* | |
| MACHINE ZONE, INC., a Delaware corporation, | |
| *Defendant*. | |

**<u>PLAINTIFF'S RESPONSE TO DEFENDANT MACHINE ZONE'S MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 3

ARGUMENT ......................................................................................................................... 4

    I.     LEGAL STANDARD .......................................................................................... 4

    II.    PLAINTIFF'S COMPLAINT STATES A VALID CLAIM UNDER
           CALIFORNIA'S UNFAIR COMPETITION LAW ...................................... 5

        A.     The Casino is an Unlawful Slot Machine Pursuant to § 330b of The
              California Penal Code ............................................................................... 5

              i.     *The California Supreme Court Recently Provided An In-Depth Analysis
                      on Similar Software* ....................................................................... 9

              ii.    *Consumers' Phones Do Not Constitute Illegal Gambling
                      Devices* ......................................................................................... 11

              iii.   *Machine Zone Cannot Seriously Argue that the Casino Operates for
                      Free* .............................................................................................. 13

              iv.    *The Casino is a Game of Chance* ................................................. 14

        B.     Plaintiff Meets the Standing Requirements of California's Unfair
               Competition Law ................................................................................... 16

              i.     *Plaintiff Has Suffered an Injury and Lost Money or Property Due to
                      Defendant's Unlawful Conduct* ..................................................... 16

               ii.    *Plaintiff Has Standing Under the UCL Because the Unlawful Conduct
                      in Question Occurred in and Emanated from
                      California* ...................................................................................... 19

        C.     California Public Policy Does Not Preclude Plaintiff From Recovering Her
               Losses and Disgorging Defendant's Illegal Profits Through The Unfair
               Competition Law ................................................................................... 21

    III.   PLAINTIFF STATES A VALID CLAIM UNDER THE MARYLAND
           LOSS RECOVERY STATUTE ........................................................................ 22

**A.   Game of War Casino is a Gambling Device Under Maryland's Loss Recovery Statute**............................................................................23

**B.   Plaintiff is Entitled to Recover Her Losses From Machine Zone** ...................25

**IV.   PLAINTIFF STATES A VALID CLAIM FOR UNJUST ENRICHMENT** ........................................................................................27

**CONCLUSION** ........................................................................................................29

# TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT CASES:**

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) ..................................................................................................4, 19

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................................................4

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................................17

*Mass v. E.P.A.,*
    549 U.S. 497 (2007) ........................................................................................................17

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ........................................................................................................17

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

*Chaset v. Fleer/Skybox Int'l, LP,*
    300 F.3d 1083 (9th Cir. 2002) .......................................................................................19

*In re MasterCard Int'l Inc.,*
    313 F.3d 257 (5th Cir. 2002) .........................................................................................19

*United States v. Lawson,*
    677 F.3d 629 (4th Cir. 2012) .........................................................................................24

**UNITED STATES DISTRICT COURT CASES:**

*Claridge v. RockYou, Inc.,*
    785 F. Supp. 2d 855 (N.D. Cal. 2011) ..........................................................................18

*Ehret v. Uber Technologies, Inc.,*
    68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..........................................................................20

*In re iPhone 4S Consumer Litig.,*
    No. C12-1127, 2013 WL 3829653 (N.D. Cal. July 23, 2013) ......................................20

*In re Toyota Motor Corp.*,
 785 F. Supp. 2d 883 (C.D. Cal. 2011) ...................................................................17, 20

*Keilholtz v. Superior Fireplace Co.*,
 No. 08-cv-00836, 2009 WL 839076 (N.D. Cal. Mar. 30, 2009) .................................28

*Lucky Bob's Internet Café, LLC v. Cal. Dept. of Justice*,
 No. 11-cv-148, 2013 WL 1849270 (S.D. Cal. May 1, 2013) ............................10-11, 13

*Mitchell v. Ottey*,
 No. Civ. 14-3152, 2014 WL 2090649 (D. Md. May 4, 2015) .......................................4

*Schultz v. Braga*,
 290 F. Supp. 2d 637 (D. Md. 2003) ...........................................................................29

*Talk N Win, Inc. v. Harris*,
 No. CV F 13-0971 LJO SMS, 2013 WL 6198939 (E.D. Cal. Nov. 27, 2013)..............13

*Tidenberg v. Bidz.com, Inc.*,
 No. CV 08-5553, 2009 WL 605249 (C.D. Cal. Mar. 4, 2009)....................................20

*Wang v. OCZ Tech. Group, Inc.*,
 276 F.R.D. 618 (N.D. Cal. 2011) ..............................................................................17

**STATE SUPREME COURT CASES:**

*Arias v. Superior Court*,
 209 P.3d 923 (Cal. 2009)............................................................................................5

*Cates v. State*,
 320 A.2d 75 (Md. 1974)......................................................................................27, 29

*Chesapeake Amusements, Inc. v. Riddle*,
 766 A.2d 1036 (Md. 2001).........................................................................................24

*Clerk of Circuit Court for Calvert Cnty. v. Chesapeake Beach Park, Inc.*,
 248 A.2d 479 (Md. 1968)...........................................................................................26

*Consumer Prot. Div. v. Morgan*,
 874 A.2d 919 (Md. 2005)...........................................................................................28

*F.A.C.E. Trading, Inc. v. Todd*,
 903 A.2d 348 (Md. 2006).....................................................................................23, 26

*Hill v. Cross Country Settlements, LLC,*
    936 A.2d 343 (Md. 2007).......................................................................................28

*Hotel Employees & Rest. Employees Int'l Union v. Davis,*
    981 P.2d 990 (Cal. 1999).........................................................................................8

*In re Tobacco II Cases,*
    207 P.3d 20 (Cal. 2009).............................................................................19, 20, 22

*Kramer v. Bally's Park Place, Inc.,*
    535 A.2d 466 (Md. 1988).......................................................................................25

*Kwikset Corp. v. Superior Court,*
    246 P.3d 877 (Cal. 2011)................................................................................17, 19

*LaFontaine v. Wilson, to Use of Ugast,*
    45 A.2d 729 (Md. 1946).........................................................................................26

*Loeffler v. Target Corp.,*
    324 P.3d 50 (Cal. 2014)..................................................................18, 19, 22

*Munson v. Del Taco, Inc.,*
    208 P.3d 623 (Cal. 2009).........................................................................................5

*People v. Whitmer,*
    329 P. 3d 154 (Cal. 2014)......................................................................................14

*People ex rel. Green v. Grewal,*
    2015 WL 3893494 (Cal. 2015)........................................................................passim

*Rose v. Bank of America, N.A.,*
    304 P.3d 181 (Cal. 2013).........................................................................................5

*State v. One Hundred & Fifty-Eight Gaming Devices,*
    499 A.2d 940 (Md. 1985)................................................................................passim

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
    950 P.2d 1086 (Cal. 1998).......................................................................................5

*Yanting Zhang v. Superior Court,*
    304 P.3d 163 (Cal. 2013).........................................................................................5

**STATE APPELLATE COURT CASES:**

*Animal Legal Defense Fund v. LT Napa Partners LLC*,
    234 Cal. App. 4th 1270 (Cal. Ct. App. 2015)........................................................17, 18

*CCI Entm't LLC v. State*,
    81 A.3d 528 (Md. Ct. Spec. App. 2013).............................................................27

*Dep't of Hous. & Cmty. Dev. v. Mullen*,
    886 A.2d 900 (Md. Ct. Spec. App. 2005).............................................................28

*Durell v. Sharp Healthcare*,
    183 Cal. App. 4th 1350 (Cal. Ct. App. 2010).........................................................22

*Jackson v. 2109 Brandywine, LLC*,
    952 A.2d 304 (Md. Ct. Spec. App. 2008).............................................................29

*Kelly v. First Astri Corp.*,
    72 Cal. App. 4th 462 (Cal. Ct. App. 1999)........................................................21, 23

*Knowles v. O'Connor*,
    266 Cal. App. 2d 31 (Cal. Ct. App. 1968)........................................................15, 16

*Kyablue v. Watkins*,
    210 Cal. App. 4th 1288 (Cal. Ct. App. 2012).........................................................22

*Law Offices of Mathew Higbee v. Expungement Assitance Srvs.*,
    214 Cal. App. 4th 544 (Cal. Ct. App. 2013)............................................................18

*People v. Shira*,
    62 Cal. App. 3d 442 (Cal. Ct. App. 1976).............................................................7

*People ex rel. Lockyer v. Pacific Gaming Techs.*,
    82 Cal. App. 4th 699 (Cal. Ct. App. 2000)....................................................10, 15, 16

*Score Family Fun Center, Inc. v. County of San Diego*,
    225 Cal. App. 3d 1217 (Cal. Ct. App. 1990)..................................................8, 10, 15

*Trinkle v. Stroh*,
    60 Cal. App. 4th 771 (Cal. Ct. App. 1997)......................................................6, 7, 8

**MISCELLANEOUS:**

18 Cal. Jur. 3d Criminal Law: Crimes Against the Person § 901 (2015)................................15

Cal. Bus. & Prof. Code §§ 17200, *et seq*...................................................................................1

Cal. Pen. Code § 330b ...........................................................................................*passim*

*City Attorney Feuer Files Suit Against Major Developer of Internet Gambling Systems:*
    *Press Release* (Jan. 2, 2015)..........................................................................12

Md. Code Ann. Crim. Law § 12-101........................................................................23, 24, 25

Md. Code Ann. Crim. Law § 12-104..............................................................................28

MD. Code, Crim. Law § 12-110...........................................................................*passim*

*Office of the City Attorney: News Release: 2015-02-19*,
    http://www.sfcityattorney.org/index.aspx?page=622....................................................12

**INTRODUCTION**

Defendant Machine Zone, Inc. ("Machine Zone" or "Defendant") is the producer of the wildly popular and profitable Game of War mobile software application, which allows players to create virtual towns and armies and battle other Game of War players. Relevant here, within the application, Defendant also allows consumers to enter its aptly named virtual "Casino" to "spin" a wheel in hopes of receiving additional prizes—including in-game currency in the form of so-called "Chips" and "Gold," which can be used to make additional spins, purchase other in-game items or be sold for real cash on secondary markets. This seemingly benign game of chance, it turns out, actually constitutes unlawful gambling equipment as statutes in both California and Maryland define that term, thus entitling players of the game to recoup the monies they have lost playing it and to other relief.

Plaintiff Mia Mason ("Mason" or "Plaintiff") is just one consumer that fell victim to Defendant's unlawful Casino game, losing more than $100 total. In response, Mason brought the instant action on behalf of herself and a class of similarly situated individuals (the "Class") in an effort to recoup funds that were unjustly obtained and retained by Defendant as a result of its unlawful conduct. In her Complaint, Mason alleges three causes of action: (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, ("UCL") by way of violation of the California Penal Code § 330b; (2) unjust enrichment; and (3) violation of the Maryland Loss Recovery Statute, MD. Code, Crim. Law § 12-110. Defendant now seeks dismissal of each of Plaintiff's claims, raising a handful of often repeated but ultimately unavailing arguments.

First, Defendant argues that Plaintiff lacks standing to enforce § 330b of the California Penal Code. That argument misses its mark. Rather than "seek to enforce" Section 330b, Plaintiff explains Defendant's violations of the Penal Code as a basis for her claim under the *unlawful* prong of the UCL.

1

As courts have consistently held, the violation of a statute or Penal Code section may form the basis of a claim under the UCL's unlawful prong when, as here, a private right of action is not expressly barred.

Next, Defendant argues that Plaintiff's UCL claim must fail because the Casino does not violate § 330b, Plaintiff does not have standing under the UCL (because she suffered no injury and is not a California resident), and allowing recovery under the UCL would run contrary to California public policy. Those arguments likewise fail. First, the Casino falls squarely within the definition of an unlawful "slot machine or device" because (1) the Casino—a game of chance—is operated upon the insertion of a thing of value "or by any other means" (i.e., money, Gold, and/or Chips); (2) the player can receive a thing of value based upon chance (i.e., in-game resources, Gold and/or Chips), and (3) the thing of value received may be exchanged for another thing of value (e.g., consumers can convert Gold to Chips, use Chips to obtain other prizes, or cash out on the secondary market). Additionally, Mason does have standing, both because she suffered an economic injury (in the form of more than $100 lost) and Defendant's conduct emanated from California. And finally, the action does not run contrary to California public policy because Defendant continues to unlawfully profit from consumers who mistakenly think they are playing a legal virtual game. That sort of unlawful conduct is exactly the sort of practice the UCL is designed to protect consumers from.

Defendant next turns its attention to the Maryland Loss Recovery Statute, arguing both that Plaintiff's claim must fail because she suffered no "loss of money" and the Casino is not a "gaming device." Those arguments fail here too. As with her California law claims, Plaintiff sufficiently alleges that she (i) wagered (and lost) more than $100 at the Casino, (ii) in consideration for a spin of the wheel and the opportunity to win a prize, (iii) in a game of chance. Nothing more be pleaded in this regard.

Finally, Defendant argues that Plaintiff's claim for unjust enrichment must fail because she

2

received precisely what she bargained for (i.e., the spin of a wheel) and therefore could not have suffered an injury. That argument also fails inasmuch as Plaintiff bargained to play a lawful simulation of a typical casino game, not an unlawful game of chance.

For these reasons and as explained further below, the Court should deny Machine Zone's motion to dismiss in its entirety and order Defendant to answer the Complaint.

## BACKGROUND

Defendant Machine Zone operates the popular Game of War videogame, offering the software to consumers for use on various mobile devices. Though Machine Zone allows the individuals to download the application for free, Machine Zone sells consumers virtual in-game currency in the form of "Gold" and "Chips"—i.e., consumers pay actual money for the Gold and Chips. (Compl. ¶ 2.) Once purchased, this virtual currency can either be used to improve a consumer's gameplay experience, or it can be spent at the Casino, a game of chance that Machine Zone has included in Game of War. (*Id*.) At the Casino, consumers spend this virtual currency for the opportunity to win additional currency or various in game items. (*Id*. ¶ 28.) Similar to traditional physical casinos, consumers regularly spend hundreds of dollars in virtual currency at the Casino chasing the opportunity to "win big." (*Id*. ¶ 2.) Machine Zone has capitalized off of the popularity and effect of this game of chance in the form of millions of dollars in profits from unknowing consumers. (*Id*. ¶ 20.)

Machine Zone's Casino operates in the same manner as any physical slot machine at a real-world casino. Consumers first purchase virtual currency for use at the Casino in the form of Gold or Chips. (*Id*. ¶ 21.) Consumers then electronically deposit Gold or Chips into the Casino to purchase a "spin" of the wheel. (*Id*. ¶ 26, 53, 81.) Once a consumer "spins" the wheel, the software's internal algorithms determine if, and what, a consumer has won. (*Id*. ¶¶ 29–30, 55–56, 80–81.) Once the spin button is

3

pressed, there is no way that a consumer can interact with the game to change the outcome or reward that they receive. (*Id*.) After processing the spin button, the Casino then awards the consumer with a prize determined by the Casino's internal software, and totally outside of the control of the consumer. (*Id*.) By operating in such a manner, the Casino mimics the same elements of any other slot machine in a physical casino: consideration, chance, and the possibility of winning a valuable prize. The prizes won in the Casino can be used to enhance consumers' gameplay experience in Game of War, used to continue playing in the Casino, or stored and accumulated in a consumer's account to later be sold on the secondary market. (*Id*. ¶ 3, 28, 37–42, 57, 82.)

Plaintiff Mia Mason downloaded and began playing Game of War on her mobile device in 2014. (*Id*. ¶ 43.) Like numerous other consumers, Mason began playing the Casino using free Chips given to her by Machine Zone. (*Id*.) And, like other consumers, after exhausting those free Chips, she began purchasing additional Chips and Gold to wager at the Casino, unknowingly playing Machine Zone's illegal game of chance. (*Id*.) As a result of those wagers, Mason lost, and Machine Zone won, more than $100 through the Casino. (*Id*.) Machine Zone has capitalized on its illegal gambling device to win money not only from Mason, but thousands of other consumers across the country, likely generating millions of dollars in profit. (*Id*. ¶¶ 45, 52–59, 75–84.)

## ARGUMENT

### I.   LEGAL STANDARD

On a motion to dismiss, courts must view all facts in a complaint and draw all reasonable inferences in the light most favorable to the plaintiff. *Mitchell v. Ottey*, Civ. No. Civ. 14-3152, 2015 WL 2090649, at *3 (D. Md. May 4, 2015) (collecting cases). Detailed factual allegations are not required. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Instead, "[t]o survive a

motion to dismiss, a complaint need only contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 1941 (citing *Twombly*, 550 U.S. at 570). As explained below, Mason's Complaint easily meets and exceeds federal pleading requirements.

## II.    PLAINTIFF'S COMPLAINT STATES A VALID CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW.

Machine Zone argues that Plaintiff's claims under the UCL must fail for three reasons: (i) the Casino does not violate § 330b of the California Penal Code (Cal. Pen. Code, § 330b "§ 330b"), (ii) Plaintiff does not have standing to bring her claims under the UCL, and (iii) public policy precludes Plaintiff from recovering her losses.[1] As explained below, each of these arguments fails and Plaintiff sufficiently states a claim for violation of California's Unfair Competition Law.

### A.    The Casino is an Unlawful Slot Machine Pursuant to § 330b of The California Penal Code.

First, Mason clearly alleges that Machine Zone's operation of its casino violates the California Penal Code § 330b. Section 330b (a) makes it unlawful to "manufacture", "own", or "possess" any "slot

---

[1]    To clarify, Plaintiff does not intend to raise Count I—violation of Cal. Penal Code § 330b—as a private cause of action here. Plaintiff alleges violation of § 330b in that format for purposes of organization and clarity, and to provide context of her claim for the *unlawful* prong of the UCL. Likewise, the order sought requesting equitable relief is not a prayer for relief arising from Machine Zone's violation of § 330b, but a recitation of the relief Plaintiff is entitled to under her UCL claims (which *are* based on Machine Zone's unlawful conduct). This is entirely appropriate, as, Courts regularly find that the violation of a statute or Penal Code section may form the basis of a claim under the UCL's unlawful prong when a private right of action is not expressly barred. *See Munson v. Del Taco, Inc.*, 208 P.3d 623, 632 (Cal. 2009) ("Violations of federal as well as state and local law may serve as the predicate for an unlawful practice claim under section 17200…."); *see also Rose v. Bank of America, N.A.*, 304 P.3d 181, 185 (Cal. 2013) (holding that "by borrowing requirements from other statutes, the UCL does not serve as a mere enforcement mechanism. It provides its own distinct and limited equitable remedies for unlawful business practices, using other laws only to define what is unlawful"); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 950 P.2d 1086, 1093 (Cal. 1998), *superseded by statute on other grounds by Arias v. Superior Court*, 209 P.3d 923 (Cal. 2009) (finding that when a plaintiff "is not suing under, or to enforce, [a section of the California Penal Code]" but rather "seeks to enforce *the UCL* by means of restitution and an injunction," then "the fact that a UCL action is based upon, or may even promote the achievement of, policy ends underlying [the Penal Code], does not, of itself, transform the action into one for the 'enforcement' of [the Penal Code]") (emphasis in original); *Yanting Zhang v. Superior Court*, 304 P.3d 163, 175-77 (Cal. 2013) (finding that plaintiff—who was able to demonstrate economic injury—had standing to bring a claim under the UCL when she identified conduct that amounted to a violation of an unfair practices statute that didn't provide for a private right of action).

machine or device" as defined by § 330b. A "slot machine or device" is expressly defined as:

> A machine, apparatus, or device that is adapted, or may readily be converted, for use in a way that, as a result of the insertion of any piece of money or coin or other object, or by any other means, the machine or device is caused to operate or may be operated, and by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her, the user may receive or become entitled to receive any piece of money, credit, allowance, or thing of value, or additional chance or right to use the slot machine or device, or any check, slug, token, or memorandum, whether of value or otherwise, which may be exchanged for any money, credit, allowance, or thing of value, or which may be given in trade, irrespective of whether it may, apart from any element of hazard or chance or unpredictable outcome of operation, also sell, deliver, or present some merchandise, indication of weight, entertainment, or other thing of value.

California Penal Code § 330b (d). In other words, to establish that equipment constitutes a "slot machine or device," plaintiffs must demonstrate: (1) that the game is operated upon the insertion of money, a coin, another thing of value "or by any other means," (2) that the user can receive a thing of value or additional chance to use the machine based upon chance, and (3) that the thing of value received may be exchanged for any "money, credit, allowance or thing of value, or which may be given in trade." *See id.* Plaintiff's allegations establish just that.

First, there should be no question that the Casino is operated *both* upon the insertion of "money or coin or other object, or by any other means." *Id.*; *see also People ex rel Green v. Grewal*, 2015 WL 3893494, at *8. A machine is considered operated when "as here, the player inserts money and then pushes buttons which operate the machine." *Trinkle v. Stroh*, 60 Cal. App. 4th 771, 780 (Cal. Ct. App. 3d 1997) (finding that "the statutes do not require that the machine begin operating directly upon insertion of a coin.") Here, the Casino is "operated through the insertion of money" and/or Chips (a thing of value, as described *infra*). That is, in order to wager, individuals must purchase Gold (later converted to Chips)—which is automatically "debited from the players' accounts and credited to"

6

Machine Zone[2] —and then press the "spin" button. (Compl. ¶¶ 53, 55.) In other words, the Casino only operates when individuals insert money and press a button. (*See id.* ¶¶ 26-30, 55, 79-81*); see also Trinkle v. Stroh*, 60 Cal. App. 4th at 780 (finding that a "flipperless pinball machine" constituted a "slot machine" when consumers initiated play by inserting money and then "pull[ing] a spring-loaded plunger to shoot each ball into the field of play.").

Even if it weren't the case that the Casino was operated upon the insertion of money or other thing of value (it is), the Casino's method of operation still falls within the clear purview of the statute. Here, the legislature establishes "the broad scope of the statute" by allowing the gambling device to be operated "by any other means," *Grewal*, 2015 WL 3893494, at *8, meaning that "[e]ven [if] a coin, money, or object (e.g., a token) was not inserted into a slot, [and] the game[] w[as] commenced *by other means* analogous thereto which effectively accomplished the same result," this element of the statute is satisfied. *Grewal*, 2015 WL 3893494, at *8 (emphasis in original) (finding that "the insertion of a PIN" or "account number," or "the swiping of a magnetic card at the computer terminal" were such "other means"); *see also Trinkle*, 60 Cal. App. 4th at 780 ("the rule requiring strict construction of penal or civil forfeiture statutes does not require that the statute be strained and distorted in order to exclude conduct clearly intended to be within its scope[,] it being sufficient if the words are given their fair meaning in accord with the evident intent of the legislature.") (modifications and quotations omitted) (quoting *People v. Shira*, 62 Cal. App. 3d 442, 460 (1976)). Here, the Casino *only* operated when individuals entered into the Casino, chose to wager their chips, and intentionally pressed the "spin" button. (*See* Compl. ¶¶ 26-30, 55, 79-81.) Accordingly, the Casino's operation clearly falls within the

---

[2]    Tellingly, Machine Zone recognizes—albeit indirectly—that the Chips and Gold wagered within Casino are "things of value" as understood by § 330b. (*See* Def. Mot. at 9–13.) Indeed, when addressing Plaintiff's UCL claim, Machine Zone expressly states that, in playing Casino, Plaintiff would win "something of value." (*See id*. at 14 (indicating that the prizes which were awarded to the consumer playing Casino were "something of value.").)

purview of § 330d.[3]

Next, Plaintiff and the putative Class members also receive things of value based upon a game of chance. California Penal Code § 330b (d). Plaintiff alleges that once a consumer presses the "spin" button, Defendant "does not accept or require any input from consumers to award a prize," (Compl. ¶ 56), and the outcome of the spin "is determined entirely by chance and not by action or skill on the part of the consumer." (*Id.*) Because a consumer can "exert no influence" over the outcome by any means, let alone "skill or judgment[,]" winning in Machine Zone's Casino is based merely on "hazard or chance." *See Grewal*, 2015 3893494, at *9 (finding that the "software system" at issue allowed a customer to win a prize based on "hazard or chance or of other outcome of operation unpredictable to the user" because the customers playing the games could "exert no influence" over the outcome of the games "by means of skill, judgment or how well they play the game.") (internal quotes omitted); *Hotel Employees & Rest. Employees Int'l Union v. Davis*, 21 Cal. 4th 585, 592, 981 P.2d 990, 996 (Cal. 1999) ("'Chance' means that winning and losing depend on luck and fortune rather than, or at least more than, judgment and skill."). These "prizes"—which includes in-game items, Gold, and additional Chips (i.e., credits)—are undoubtedly "things of value" because Gold and Chips may be purchased in Defendant's store for actual money, and in-game items, Gold, and Chips "may be given in trade for money, credit, allowance or a thing of value" on secondary markets. (Compl. ¶ 57); *see also Trinkle*, 60 Cal. App. 4th at 776 (finding that machines which "could award hundreds of extra credits or potential free replays to a winning player, depending on the odds" an unlawful slot machine); *Score Family Fun Center, Inc. v. County of San Diego*, 225 Cal. App. 3d 1217, 1221–23 (Cal. App. 4th 1990) (finding that "arcade video game that

---

[3]    Indeed, in analyzing claims under § 330b, courts need not read the statute "in context of the technology available in 1950." *Trinkle*, 60 Cal. App. 4th at 784. Instead, they should consider whether modern technology fits within the legislature's broad reading of the statute.

simulated card games violated § 330b because operators could, as a matter of chance, win free games or extended play."). Of course, Defendant expressly admits that this element is satisfied by stating that the prizes are "things of value." (*See* Def. Mot. at 14) (recognizing that "[Plaintiff] (like any player who visits the Casino) always received something of value within the game.") (citing Compl. ¶ 43.)

Finally, Plaintiff sufficiently alleges that the thing of value received—here, Chips, Gold, and other resources—may be exchanged for another thing of value, which Defendant likewise admits. (Def. Mot. at 18-19) (recognizing that "Plaintiff could…even play at the Casino after converting the virtual Gold to virtual Chips….") Plaintiff goes into great detail to explain how individuals can convert their winnings into other things of value both within Game of War itself and on the secondary market. In particular, Plaintiff explains that individuals receive awards in the Casino that "vary in value from 'resources' that can be used to advance game play (*e.g.,* wood or stone) to high-value items such as additional Casino Chips or Gold," (Compl. ¶ 28), and that these prizes can be converted into other things of value. (*Id.*) By way of example, individuals can win Gold, which is frequently converted to Chips that are wagered in the Casino (not to mention purchased in the Game of War store) or Chips that are like credits allowing for additional plays within the game. (*See id.* ¶ 21.) Additionally, Plaintiff alleges that players frequently "cash out" their winnings (in the typical casino-sense) through a secondary market where consumers across the country buy and sell Game of War accounts for actual money.[4] (*Id.* ¶¶ 2, 27-42.)

Accordingly, Mason clearly alleges that Machine Zone's operation of its casino violates the

---

[4]     In its Motion, Defendant argues that the secondary market has no relevance because the Terms of Service provide that "Virtual Currency and Virtual Goods may never be redeemed for 'real world' money, goods, or other items of monetary value from Machine Zone or any other person." (Def. Mot. at 19 n.4) (citing Compl. Ex. A ¶ 14b.) Those sorts of disclosures, however, have no bearing on the statute's applicability and are regularly disregarded by courts. *See, e.g., Grewal*, 189 Cal. Rptr 3d 686 (finding that defendant's use of a gambling disclaimer would not prevent it from being held liable for gambling).

California Penal Code § 330b.

> ### i.   The California Supreme Court Recently Provided an In-Depth Analysis on Similar Software.

The Court, however, need not undertake this analysis on statutory interpretation alone, as the California Supreme Court recently provided a thorough analysis of what constitutes a slot machine or "device" pursuant to § 330b in the *Grewal* matter.[5] In *Grewal,* Internet café owners used sweepstakes to promote the sale of computer and Internet time to their customers. 2015 WL 3893494, at *8 (Cal. June 25, 2015). The café defendants "implemented [the sweepstakes] through a software system" whereby customers received a number of "sweepstakes points" for every dollar of Internet time they purchased along with a "PIN" (which would be used to identify winners) assigned by a café employee. *Id.* "[N]o purchase was necessary to enter" the sweepstakes and the defendants awarded first-time customers an automatic 500 sweepstakes points and then "100 free sweepstakes points every day" after that. *Id.* The Supreme Court of California stated that "[t]he sweepstakes operation was an integrated whole, with an outside company supplying the software to operate the game. The outside company's software, which was connected to the computer terminals at the business, predetermined the result of each game." *Id.* at *6.

In determining whether preliminary injunctions entered against the defendants were valid, the Supreme Court of California analyzed cases where software was an important (if not the only) component of the offending gambling device. *Id.* at *6-7 (citing *People ex rel. Lockyer v. Pacific Gaming Techs.*, 82 Cal. App. 4th 699, 702 (Cal. Ct. App. 2000) (finding a § 330b gambling device where "preset computer program" determined chance of winning); *Score Family Fun Center, Inc. v.*

---

[5]    *People ex rel. Green v. Grewal* is the sole authority referenced by Machine Zone in support of its argument. (Def. Mot. at 10–11.) Yet, Defendant wholly overlooked the actual analysis of the *Grewal* court. (*See* Def. Mot. at 9–11.) As demonstrated below, *Grewal* actually supports a finding that the Casino software *is* a gambling device.

*County of San Diego,* 225 Cal. App. 3d 1217, 1221–23 (Cal. Ct. App. 1990) (finding that "arcade video game that simulated card games violated § 330b because operators could, as a matter of chance, win free games or extended play."); (citing *Lucky Bob's Internet Café, LLC v. Cal. Dept. of Justice,* No. 11–cv–148, 2013 WL 1849270 (S.D. Cal., May 1, 2013), *appeal dismissed* (May 7, 2014) (describing *Lucky Bob's* as "[a] recent federal case applying California law [§ 330b] to an Internet sweepstakes game" that constitutes a modern unlawful gambling device)). In line with the "computer program," "video game," and "Internet sweepstakes game," the Court ultimately held that the Internet café defendants' networks, computer servers, *and software* used to operate the sweepstakes constituted the apparatus in each café and devices prohibited by § 330b. *Id.*

The result should be no different here. As explained above, and just like in *Grewal,* Defendant operated computer software that simulated a casino-style game of chance, which did not require—and, indeed, did not allow—consumers to have any input in the result of their participation. Accordingly, the Casino constitutes a "slot machine or device" pursuant to § 330b of the Penal Code, and Plaintiff's claims should stand.

> ## ii.       *Consumers' Phones Do Not Constitute Illegal Gambling Devices.*

Perhaps recognizing that every other element of an "unlawful gambling device" is met, Machine Zone argues that "software or [a] computer program [can't] violate Section 330b" and that instead, it is the phones on which individuals play in the Casino that are unlawful. (Def. Mot. at 9, 11 ("[e]ven if Plaintiff were correct that GoW, once downloaded onto a user's own device, constituted a type of illegal gambling . . . it would be the user's <u>device itself</u> that was made unlawful under Section 330b(a).") (emphasis in original.) That argument disregards the plain reading of *Grewal,* which explicitly held that sweepstakes "implemented through a *software* system that a company…provided" and that was accessed

by the defendant café owners' computers, as a whole, constitutes an unlawful device under § 330b. *Grewal*, 2015 WL 3893494, at \*10 (quoting appellate court's analysis that § 330b "is not limited to an isolated or stand-alone piece of physical hardware, but broadly includes 'a machine, *apparatus,* or device that is *adapted* ' for use as a slot machine or device."). Indeed, the same developer whose software was at issue in *Grewal* was sued by the city attorneys of Los Angeles and San Francisco under § 330b for being "creative software developers [who] have and continue to design, market, sell, license, and monitor interactive games that masquerade as lawful promotional sweepstakes" but which are "incontestably unlawful gambling devices." *See* City Attorney Feuer Files Suit Against Major Developer of Internet Gambling Systems: Press Release (Jan. 2, 2015) (a true and accurate copy of which is attached as Exhibit A); *see also Office of the City Attorney: News Release: 2015-02-19*, http://www.sfcityattorney. org/index.aspx?page=622, (celebrating "a stipulated injunction from its gambling software vendor, Figure 8 Technologies Inc., to cease all of its operations in the State of California for five years.")

Here, Game of War and the Casino are owned, maintained, and operated by Defendant. (*See* Def. Mot. at 1 ("Defendant … is the maker of the wildly popular Game of War: Fire Age … video game …"); 10; Def. Mot. at 11 ("Machine Zone only provides software…"); *see also* Dkt 1-1 (recognizing that Machine Zone owns the software and only allows individuals to use it).) Defendant controls the software and network that supports the Casino (i.e., the software and network that allows Defendant to maintain, deposit, and withdraw consumers' funds, Gold, and Chips) and caused Plaintiff's device to act as a "discrete terminal" for *its* Casino. (Compl. ¶ 25) (describing Defendant's Gold store and accounting system); (*Id.* ¶ 30) (describing Defendant's detailed record keeping); (*Id.* ¶ 54) (alleging that Defendant caused Plaintiff's device to act as a "discrete terminal" for *Defendant's* Casino).

12

A plain reading of Plaintiff's allegations, then, demonstrates that the mobile phones are simply used to access *Defendant's* systems—they have no other role than merely passively running the application. That is, it is Defendant's software that accepts dollars for Gold ("the insertion of any piece of money or coin or other object, or by any other means"), Defendant's software that uses "algorithms" or "pre-determined odds" to produce an outcome ("by reason of any element of hazard or chance or of other outcome of operation unpredictable by him or her"), and Defendant's software that "awards players things of value" ("any piece of money, credit, allowance, or thing of value"). (*Id.* ¶¶ 55, 56); *see* Cal. Penal Code § 330b (d). As such, Defendant's systems comprise the "modern technology" of a device that "come[s] within the statutory definition of a 'slot machine or device' in Penal Code section 330b." *See Grewal*, 2015 WL 3893494, at *1; *see also Talk N Win, Inc. v. Harris*, No. CV F 13-0971 LJO SMS, 2013 WL 6198939, at *17 (E.D. Cal. Nov. 27, 2013) (declining to "second guess state and local law enforcement['s]" decision to seize, pursuant to 330b, plaintiff's "computer software [that] enable stores' customers to participate in a sweepstakes game through computer workstations."); *Lucky Bob's Internet Café,* 2013 WL 1849270, at *4 (finding that "Plaintiffs' network of machines," including "computers, servers, monitors, and related equipment" that allowed players to play "seventeen casino-style games," "qualify as slot machines under Section 330b.").

Plaintiff's smart phone, on the other hand, is merely the avenue through which Defendant's unlawful gambling operations are accessed. To hold otherwise would mean that all smart mobile devices and computers, in general, would be illegal gambling devices, which clearly was not the intent of the California legislature. *See* Cal. Pen. Code § 330b(d) (expressly limiting what constitutes an illegal device to one which is predicated on "hazard or chance"). Rather, the focus (as described above) is on Defendant's systems—i.e., its stand-alone software, in-software Casino, and the computer network on

which they are maintained—that *by themselves* operate as an unlawful gambling "device." And even if the phone itself was to be considered a gambling device (the case law is clear that it should not be), it's Defendant's own conduct (again, its maintenance and operation of its casino software and network) that rendered it as such.

### iii.   Machine Zone Cannot Seriously Argue that the Casino Operates for Free.

Machine Zone argues further that the Casino cannot be a device prohibited by § 330b (d) because it can operate "entirely for free." (Def. Mot. at 11.) As an initial matter, the Casino does not operate "entirely for free." As Plaintiff has alleged, she "purchas[ed]…Chips by buying gold in increments of at least $4.99" and then "wager[ed] Chips for a chance at winning a prize in Defendant's Casino." (Compl. ¶ 43.)[6] As such, in order to "spin" and wager Chips and Gold for other things of value, Plaintiff and the putative Class had to pay real money to obtain them from Defendant. *See* Def. Mot. at 11. Thus, it is clear that the Casino does not operate for free and that it falls "within the broad scope of the statute." *Grewal*, 2015 WL 3893494, at *8.

But even if it the Casino could operate entirely for free, the fact that an unlawful gambling device can do so does not somehow make it legal. *Grewal*, 2015 WL 3893494, at *13 (rejecting defendants' argument that because their devices "offered a limited number of sweepstakes entries for no charge," "no purchase was necessary" to enter, and even "noncustomers could obtain free sweepstakes entries," they were not § 330b gambling devices). Accordingly, the Casino constitutes an illegal gambling device under § 330b.

### iv.   The Casino is a Game of Chance.

Finally, Machine Zone argues that the Casino is excluded from the application of § 330b because

---

[6]      Plaintiff also alleged that Defendant likely makes a good portion of its revenue off of the Casino. (Compl. ¶ 20.)

Game of War (the application in which the Casino is played) is "predominantly a game of skill." (Def. Mot. at 11.) Under Defendant's logic, any game of chance normally violating § 330b (e.g., a physical slot machine found in a casino with only poker tables) can be transformed into a legal game by surrounding it with games of skill. Not so.

Section 330b (d) makes it unlawful for a device to use games of chance. *See* Cal. Penal Code § 330b. The test of whether a game is one of chance or skill is "not whether the game contains an element of chance or an element of skill but which of them is the dominating factor in determining the *result of the game*." 18 Cal. Jur. 3d Criminal Law: Crimes Against the Person § 901 (2015) (emphasis added). For example, "[p]inball and other amusement machines or devices" are expressly excluded from being a "slot machine or device" because they "are predominantly games of skill," Cal. Penal Code § 330b, and require the intentional, thoughtful, and active use of flippers to play.[7] Indeed, even games that generally require skill, like blackjack, are considered games of chance when played using a computer program, because "the user does not know what the intricate electric circuitry will produce on the video screen[,] [h]e cannot inspect the deck, ask for a new deck, have the cards reshuffled or evaluate the dealer" and is therefore presented with "at most, only an illusion of skill." *Score Family Fun Ctr.*, 225 Cal. App. 3d at 1222 (citation omitted). Typical slot machines, on the other hand, clearly fall within the statute, because individuals have no control over the outcome of their participation. *See Pac. Gaming Techs.*, 82 Cal. App. 4th at 701 (finding that a telephone vending machine was an illegal slot machine where the outcome was dependent entirely on chance and holding that "[i]t looks like a slot machine. It acts like a

---

[7]     Though the statute expressly excludes pinball machines as a "slot machine or device," the exclusion itself is limited. *Knowles v. O'Connor*, 266 Cal. App. 2d 31, 33, 71 Cal. Rptr. 879 (Cal. Ct. App. 1968) (finding that the exclusion is limited when "[t]he player receives nothing of value from the machines other than free games which are for amusement purposes only."). Thus, even if the exclusion to "games of skill" could apply here, Machine Zone's argument would still fail inasmuch as Plaintiff has alleged that the Casino distributed something of value—Gold, Chips, and other in-game items—other than free games to its players. *See Knowles*, 266 Cal. App. 2d at 33; (Compl. ¶¶ 57.)

slot machine. It sounds like a slot machine…In our view, if it looks like a duck, walks like a duck, and sounds like a duck, it is a duck.").

Here, there can be no question that the Casino qualifies as a game of chance. (*See* Compl. ¶ 56 (the Casino "is determined entirely by chance and not by action or skill on the part of the consumer.") Once individuals enter the Casino, they can merely press the "spin" button. (*Id.* ¶¶ 26-30.) After that, they have absolutely no say in what happens: they cannot alter the outcome of the game in any way, cannot speed up or slow down the timing of the results, and cannot stop the game. (*Id.*) They can provide *no input whatsoever. See* 18 Cal. Jur. 3d § 901; (*see* also Compl. ¶ 56.) Here, then, rather than skill being the "dominating factor in determining" an individual's result, skill has *absolutely no* effect on the outcome of the Casino games. Instead, the outcome is based solely on chance, and the Casino constitutes a "slot machine." (Compl. ¶ 56); *Grewal*, 2015 WL 3893494, at *7.

Nevertheless, Machine Zone argues that the Court should look to the Game of War mobile application as a whole—rather than just the Casino within it—to determine whether the game is one of chance or of skill. (Def. Mot. 12–13.) That argument is a red herring. Aside from the fact that it is illogical—i.e., it would allow anyone to escape liability by merely placing an illegal slot machine amidst other games of skill—Machine Zone fails to offer any legal authority to demonstrate why the Casino must be considered in conjunction with Game of War as a whole. (*Id.*) In any event, Machine Zone's argument must fail regardless because the exclusion does not extend to games that distribute something of actual value. *Knowles*, 266 Cal. App. 2d at 33 (finding that the exclusion is limited to when the game is predominantly one of skill *and* "[t]he player receives nothing of value from the machines other than free games which are for amusement purposes only."). As such, the Casino is a device prohibited by § 330b. *Pac. Gaming Techs.*, 82 Cal. App. 4th at 701 (in holding a device was illegal under § 330b, the

court noted that the device in question operated, looked, and sounded like a slot machine).

**B.      Plaintiff Meets the Standing Requirements of California's Unfair Competition Law.**

Machine Zone next contends that Plaintiff lacks standing to bring her claims under California's

Unfair Competition Law, arguing that Plaintiff (i) has suffered neither an injury nor a loss and (ii) lacks

standing as a non-California resident.[8] (Def. Mot. at 15–16.) These arguments likewise fail.

   ***i.      Plaintiff Has Suffered an Injury and Lost Money or Property Due to
        Defendant's Unlawful Conduct.***

First, Machine Zone's argument that Plaintiff has not suffered an injury or a loss because she

received the benefit of her bargain is wrong. (*See* Def. Mot. at 13.)

To establish standing under the UCL, a plaintiff must "(1) establish a loss or deprivation of

money or property sufficient to qualify an injury in fact, i.e., *economic* injury, and (2) show that that

economic injury was the result of, i.e., *caused* by, the unfair business practice or false advertising that is

the gravamen of the claim." *Animal Legal Defense Fund v. LT Napa Partners LLC*, 234 Cal. App. 4th

1270, 1279 (Cal. Ct. App. 2015), *review denied* (June 10, 2015)  (quoting *Kwikset Corp. v. Superior

Court*, 246 P.3d 877, 885 (Cal. 2011)).   Standing requires a plaintiff to "demonstrate that [he or she] has

suffered a concrete and particularized injury that is either actual or imminent, that the injury is fairly

traceable to the defendant, and that it is likely that a favorable decision will redress that injury." *Mass v.

E.P.A.*, 549 U.S. 497, 517 (2007); *see also Whitmore v. Arkansas*, 495 U.S. 149, 154 (1990). "[G]eneral

factual allegations of injury resulting from the defendant's conduct may suffice [at the pleadings stage]."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (internal citations and quotations are omitted).

And relevant here, the "precise dollar value of [] losses" is not required…so long as the plaintiff

---

[8]      Machine Zone also argues that Plaintiff's UCL claim must fail for a failure to allege a violation of § 330b.
However, as discussed below, Machine Zone has violated § 330b by manufacturing, owning, and possessing a
prohibited slot machine or device.

"allege[s] a tangible loss that can be proved or disproved upon discovery." *Wang v. OCZ Tech. Group,*
*Inc.*, 276 F.R.D. 618, 625 (N.D. Cal. 2011) (citing *In re Toyota Motor Corp*, 754 F. Supp. 2d at 1166).
In the end, the standing requirement "is not a substantial or insurmountable hurdle; it suffices to allege
some specific, identifiable trifle of injury." *Animal Legal Def. Fund*, 234 Cal. App. 4th at 1279 (internal
quotations omitted) ("If a party has alleged or proven a personal, individualized loss of money or
property in any nontrivial amount, he or she has also alleged or proven injury in fact.").

Here, there is no question that Plaintiff suffered an economic injury by wagering in the Casino.
Indeed, not only does she allege that she lost $100 between early 2014 and January 2015, but she also
explains that she lost "typically $0.60 per spin" to Machine Zone as a direct result of its manufacture,
possession, and/or ownership of the Casino. (Compl. ¶¶ 43, 66–67.) And but for Machine Zone's
violation of § 330b, the injury would not have occurred, as Plaintiff would not have been able to
unknowingly access the illegal device. (*Id.*); *see also Claridge v. RockYou, Inc.* 785 F. Supp. 2d 855,
862 (N.D. Cal. 2011) (recognizing that to satisfy the requirement of "lost" money, a plaintiff need only
allege that they "parted, deliberately or otherwise, with some identifiable sum formerly belonging to
h[er] or subject to h[er] control; it has passed out of h[er] hands by . . . being . . . ceded in a gamble.");
*Law Offices of Mathew Higbee v. Expungement Assistance Srvs.* 214 Cal. App. 4th 544, 561 (Cal. Ct.
App. 2013) (holding that a plaintiff need only provide an "identifiable trifle of injury" to establish
standing).

Machine Zone nevertheless contends that Plaintiff has suffered no economic injury because she
received the benefit of her bargain (i.e., that Plaintiff converted her real-world money into Gold and then
Chips to wager the Chips at the Casino, and that her bargain was whatever prize the spinning wheel

awarded).[9] (Def. Mot. at 13–14.) Plaintiff, however, *did not* receive the benefit of her bargain when she paid to wager in Defendant's Casino. That is, in purchasing Gold and thereafter wagering Chips, Plaintiff entered into a bargain for the opportunity to play what she believed was a *legal* video game. (Compl. ¶¶ 2, 21.) What she received, however, was something entirely different: the opportunity to unknowingly utilize an "illegal game of chance camouflaged as a benign videogame." (Compl. ¶¶ 2, 21.) Because Plaintiff bargained to participate in one game but received another, she did not receive the benefit of her bargain and has standing to bring her claim for violation of the UCL. *See, e.g., Kwikset Corp.*, 246 P.3d at 891 (finding a consumer plaintiff who had not received the benefit of his bargain by purchasing mislabeled locksets had standing to bring suit under the UCL).[10]

Accordingly, Plaintiff has the standing required to bring her UCL claims.[11]

---

[9]     It is worth noting that this is precisely the type of unfair competition meant to be precluded by the 'unlawful' prong of the UCL. *See Loeffler v. Target Corp.*, 58 Cal. 4th 1081, 1125, 324 P.3d 50, 75-76 (2014) ("The UCL was intended to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur and to enable judicial tribunals to deal with the innumerable new schemes which the fertility of man's invention would contrive.") (internal quotes omitted). By participating in such unlawful activity, Machine Zone precludes consumers, like Plaintiff, from receiving the full benefit of their intended bargain. It also allows Defendant to gain a competitive edge over legal application and software developers through means of its illegal gambling device.

[10]     Defendant's authorities do not require a different result. Indeed, in *In re MasterCard Int'l Inc.*, the court held that the plaintiff did not suffer injury from credit card companies when they purchased online casino chips and incurred subsequent illegal gambling debts, because the defendants were not a party to the transaction and "completed their transaction with the [p]laintiffs before any gambling occurred." 313 F.3d 257, 262 (5th Cir. 2002) (emphasis in original). And in *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002), the court found that a plaintiff did not suffer any injury when they did not receive a limited-edition card randomly included in some trading card packages. Those cases are entirely inapposite, because Plaintiff (i) purchased the Gold directly from Defendant Machine Zone and (ii) was promised something of value in return for her legal wager.

[11]     Defendant further argues that Plaintiff's allegations regarding her economic loss are insufficient and internally inconsistent. (Def. Mot. at 15 fn.2.) However, Defendant appears to think that some heightened pleading requirement applies here (it does not) due to its demand for specific allegations regarding the amount of Gold and Chips lost at Casino. (*Id.*) Furthermore, Plaintiff's allegations that she consistently received something of less value in exchange for her consideration do not contradict her allegations that she "lost money." Plaintiff's perceived "inability" to plead these facts is more properly understood as Plaintiff's conformance to the pleading requirements set forth by Federal Rule of Civil Procedure 8 and demonstrate neither implausibility nor a fatal defect in her claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)

     ii.       ***Plaintiff Has Standing Under the UCL Because the Unlawful Conduct in Question Occurred in and Emanated from California.***

Machine Zone next argues that Plaintiff lacks standing to bring her UCL claim because, as a citizen of the state of Maryland, she has failed to allege that either her injury or the underlying unlawful conduct occurred in California. (Def. Mot. at 15.) These arguments fail as well.

When courts analyze whether an individual has standing to bring a claim under the UCL, the plaintiff's state of residence is just one factor. For non-resident plaintiffs, "the focus of the statute is on the defendant's conduct" because "[t]he substantive right extended to *the public* by the UCL is the right to protection from fraud, deceit and unlawful conduct." *In re Tobacco II Cases*, 207 P.3d 20, 37-38 (Cal. 2009). As a result, relief under the UCL "may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." *Tidenberg v. Bidz.com, Inc.*, No. CV 08-5553, 2009 WL 605249, at *4 (C.D. Cal., Mar. 4, 2009); *In re iPhone 4S Consumer Litig.*, No. C12-1127, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013); *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1131 (N.D. Cal. 2014).

Here, there should be no question that Defendant's unlawful conduct occurred in California. The wrongful conduct at the core of Plaintiff's claims (and which ultimately gives rise to Plaintiff's injury) is that Machine Zone *owns* or *possesses* the Casino in violation of § 330b, which it does at its headquarters in California. (Compl. ¶ 6, Ex. A); *see also* § 330b(a); *Grewal*, 2015 WL 3893494, at *8–9. Likewise, the Complaint, and its exhibits, make clear that Machine Zone not only operates the Casino, but that the "software, applications, games, text, graphics, images, sounds, video, and other material, information, or content, perceived, made available from, uploaded to, or otherwise transmitted on or through the Site or Services . . . is the sole and exclusive property of Machine Zone." (Compl. ¶ 1, Ex. A ¶ 8 (a)–(b).) As a

---

("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

result, it is clear that Machine Zone "owns" or "possesses" the Casino (the unlawful conduct alleged), *and* that it does so in California. *In re Toyota Motor Corp.* 785 F.Supp.2d 883, 917 (C.D. Cal. 2011).[12]

Notwithstanding this clear application of California law, Defendant tries to escape liability by claiming that Plaintiff cannot "have it both ways" by bringing claims under both Maryland and California law. (Def. Mot. at 16) ("Plaintiff cannot on the one hand claim that Machine Zone's conduct violates Maryland's criminal law, which necessarily only applies to conduct within the State of Maryland, while at the same time claiming that the allegedly unlawful conduct occurred in violation of California's Penal Code…this irreconcilable tension highlights the deficiency in her UCL claim.") (internal citation omitted). This argument misunderstands both Plaintiff's claims and the law, as Plaintiff seeks relief under California's UCL because Machine Zone owns and/or possesses the Casino in California and seeks relief under Maryland law because Machine Zone improperly retains Maryland consumers' gambling losses. (Compl. ¶¶ 52-68, 75-84.) Thus, the conduct at issue in the claims is unquestionably different, and there is no "irreconcilable tension" as a result. If anything, the availability of multiple causes of action under the laws of multiple states identifies Defendant's callous disregard for verifying its compliance with the nation's varied gambling laws.

Accordingly, Plaintiff has standing to invoke the UCL as a non-resident of California.

**C.    California Public Policy Does Not Preclude Plaintiff From Recovering Her Losses and Disgorging Defendant's Illegal Profits Through The Unfair Competition Law.**

In a final effort to dismiss Plaintiff's UCL claim, Defendant argues that she cannot recover because she is in possession of the "slot machine or device" (i.e., her phone) and "California has a 'strong policy against judicial resolution of civil claims arising out of gambling contracts or transactions." (Def. Mot. at 17) (quotations and citation omitted). Both of these arguments fail.

---

[12]    Indeed, Defendant's unsupported claim that Plaintiff's loss "would have occurred in Maryland" is, once again, beyond the pleadings and should be afford no weight. (Def. Mot. at 15.)

First, and as discussed in Section II.A.ii, *supra*, Plaintiff does not possess a slot machine or gambling device, which is the illegal conduct proscribed by the Section 330b. Rather, the software for the Casino is the gambling device and is in Defendant's sole possession and ownership. *Id*. Therefore, Plaintiff herself is not in violation of § 330b, and the "circumstances" that Defendant claims Plaintiff "cannot recover under" do not exist.[13]

Defendant's public policy argument fairs no better. While it is true that courts typically do not aid parties in enforcing gambling contracts, they will if there is a statute authorizing a recovery of gambling losses. *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 476, 481-82 (Cal. Ct. App. 1999) (a plaintiff cannot recover gambling losses "*except where he may have a remedy under the particular provisions of some statute.*") (emphasis in original). Under the UCL specifically, an action will only be forestalled if "another provision…actually 'bar[s]' the action or clearly permit[s] the conduct." *Loeffler*, 324 P.3d at 76. Indeed, in recent years, "courts…have noted that 'California's historical public policy against gambling has been substantially eroded.'" *Kyablue v. Watkins*, 210 Cal. App. 4th 1288, 1293-94 (Cal. Ct. App. 2012) (citations omitted). That is especially true when, as Defendant proposes, enforcing the public policy prohibition will allow defendants to be unjustly enriched as a result of their unlawful conduct. *Id.* at 1292-93 (citations and quotations omitted).

Here, Plaintiff's claim should stand for two reasons. First, Plaintiff brings her claim under the UCL, which allows for the recovery of damages she incurred as a result of Defendant's unlawful conduct—i.e., its maintenance of the unlawful slot machine. *In re Tobacco II Cases*, 46 Cal.4th at 324 (the UCL extends consumers the right to protection from unlawful conduct). Because the UCL

---

[13]     Defendant confusingly argues that if Plaintiff were in violation of § 330b, she would be "engaging in illegal gambling." (Def. Mot. at 17) (Internal quotes omitted). However, violation of § 330b does not constitute illegal gambling, it is the possession of an unlawful gambling device (the software, here) that violates the Section. Cal. Penal Code § 330b.

authorizes recovery and no other statute bars it, typical public policy considerations against such claims have no bearing. *See Kelly*, 72 Cal. App. 4th at 476, 481-82; *Loeffler*, 58 Cal. 4th at 1125. Additionally, if the Court dismisses Plaintiff's UCL claim, Defendant will be allowed to continue its unlawful conduct at the expense of thousands of unknowing consumers nationwide, which itself would be contrary to the policies underlying the UCL. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350,1359 (2010) ("The purpose of the UCL is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services") (internal citation omitted).

Accordingly, Plaintiff's claim under the UCL survives.

## III.   PLAINTIFF STATES A VALID CLAIM UNDER THE MARYLAND LOSS RECOVERY STATUTE.

Machine Zone next argues that Plaintiff's claims under the Maryland Loss Recovery Statute must fail because (i) the Casino is not a "gaming device" prohibited by the statute and (ii) Plaintiff has not suffered a loss entitling her to recovery. Both of these arguments miss their mark.

### A.   Game of War Casino is a Gambling Device Under Maryland's Loss Recovery Statute.

First, Machine Zone only argues that the Casino is not a gaming device under Maryland law because "no money or other thing of value has been bet, wagered, or gambled." (Def. Mot. at 20.)[14] This argument ignores the plain allegations of Plaintiff's complaint.

---

[14]   Defendant also claims that the Casino cannot be gambling because Plaintiff won something on every spin of the Casino and was able to know every price potentially offered before playing. That argument is untenable. Under Defendant's theory a slot machine, which is indisputably a gambling device, charges $1.00 per spin and pays out *at least* $0.01 on every spin, while displaying a full list of its potential payouts, it would be exempted from the statute even though a player could lose 99% of their wager on every spin of the wheel. In keeping with Defendant's theory, if a player would be assured to receive *some* payout for use of the slot machine and knew every potential payout before playing, then Maryland law would not deem the slot machine a gambling device. *See F.A.C.E. Trading, Inc. v. Todd*, 393 Md. 364, 375, 903 A.2d 348, 354-55 (Md. App. Ct. 2006) (finding a coupon card game was an illegal slot machine in that the "product discount[s]" it offered as prizes were "merely incidental to the game of chance"). Such a reading would fail to follow Maryland court's construction of statutes "relating to gambling and betting liberally, so as to prevent the mischiefs intended to be provided against." *One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d at 957.

Maryland law defines a gaming device as any "game or device at which money or any other thing or consideration of value is bet, wagered, or gambled." Md. Code Ann. Crim. Law § 12-101 (d)(1)(ii). "Gambling" is further defined as "consideration, chance and reward[.]" *State v. One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d 940, 951 (Md. 1985) (providing a lengthy discussion of the elements of various gaming devices). Those three elements are "clearly present in a device which, for a price, and based upon chance, offers a monetary or merchandise reward to the successful player." *Id.*

The Casino falls squarely into the definition of a "gaming device" because Plaintiff and the Class members paid money for Gold to convert into Chips, which they then wagered or gambled for a "spin" of the wheel. Once an individual chooses to "spin" (and therefore pays to play with Chips), their ability to win something of value is left purely to chance. (Compl. ¶ 80.) Accordingly, Plaintiff and the Class (i) provided consideration in the form of money, Gold, and ultimately Chips (ii) for the chance (iii) to win an award in the form of in-game resources, Gold, or other Chips. Accordingly, they "gambled" or "wagered" Chips in the Casino. *One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d at 951. And because they "gambled" or "wagered" in the Casino *game*, the Casino constitutes a "gaming device" under Maryland law. Md. Code Ann., Crim. Law § 12-101 (d)(1)(ii).[15]

Defendant nevertheless argues that the Gold and Chips gambled and the prizes awarded in the Casino have no monetary value to Plaintiff, so nothing could be "bet, wagered, or gambled." (Def. Mot. at 20.) That argument fails for two reasons. First, it entirely contradicts Defendant's position that when Plaintiff "chose to expend [the] virtual Gold resource on additional Chips to be used at the Casino…she

---

[15]     Defendant hangs its hat on the argument that the Court cannot furnish an adequate definition of "bet" or "wager" in its analysis of Plaintiff's claims. (Def. Mot. at 19.) It argues that a Fourth Circuit Court of Appeals' opinion (applying Nevada legal definitions to a South Carolina statute prohibiting wagering upon animal fights) should provide a controlling definition of "wager" here. *United States v. Lawson*, 677 F.3d 629, 654 (4th Cir. 2012). But the definition of "gambling" as applied to gaming devices by the courts of Maryland is a more logical alternative. *See One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d at 940.

(like any other player who visits the Casino) *always received something of value within the game*." (Def. Mot. at 14)) (quoting Compl. ¶ 27 ("The consumer is <u>awarded</u> whatever <u>prize</u> the animated light lands on.")) (citation omitted) (italics added). Second, the "something of value" that Plaintiff and the Class members received had a corresponding monetary value—e.g., the Chips and Gold were sold for purchase, and Plaintiff and the Class can always "cash out" by listing their Game of War accounts (including all of the prizes won) on the secondary market. (Compl. ¶¶ 3, 37-42.)  This is no different than how slot machines work at any casino.[16]

Accordingly, Plaintiff's claims under the Maryland Loss Recovery Statute should stand.

**B.      Plaintiff is Entitled to Recover Her Losses From Machine Zone.**

Machine Zone further argues that that Plaintiff has not lost money through the Casino and therefore cannot recover under Maryland's Loss Recovery Statute. That argument similarly fails.

Maryland's Loss Recovery Statute allows for the recovery of gambling losses incurred at a gaming device. *See* Md. Code Ann., Crim. Law § 12-110 ("A person who loses money at a gaming device that is prohibited by this subtitle, Subtitle 2 of this title, or Title 13 of this article: (1) may recover the money as if it were a common debt; and (2) is a competent witness to prove the loss."). Here, Plaintiff alleges just that: she (i) lost more than $100 dollars from early 2014 to January 2015 (ii) while unknowingly gambling through Defendant's unlawful gaming device (the Casino). (Compl. ¶ 43.) This allegation sufficiently demonstrates that Plaintiff (i) suffered losses (ii) by playing in the Casino, an illegal gaming device. (*Id.*); *see* Md. Code Ann., Crim. Law § 12-110. As such, Plaintiff sufficiently

---

[16]      The same would be true even if the Casino did not charge individuals to play. *See Chesapeake Amusements, Inc. v. Riddle*, 766 A.2d 1036, 1045 (Md. 2001) (finding that free play devices are illegal when "equipped with odds mechanisms, or a meter for recording the number of free plays released, or other established indicia of a gambling device."). That is because the Casino tracks the Chips that individuals wager and the prizes they receive, which are "representative of or convertible to money." *One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d at 956.

states her claim under the statute and can recover her losses. *See Kramer v. Bally's Park Place, Inc.*, 535 A.2d 466, 469 (Md. 1988) (discussing application of the Maryland Loss Recover Statute in its various forms to allow for the recovery of losses sustained through illegal gambling).

Defendant nevertheless argues that the Court should dismiss Plaintiff's claims because she has lost Chips—not money—"through gambling in GoW." (Def. Mot. at 18.)[17] That is a distinction without a difference.

First, Plaintiff did lose money at the Casino. The fact that she converted her real-world currency for in-game Chips cannot shield Defendant from liability—indeed, casinos *always* convert individuals' money into "credits" that are wagered for prizes. *See F.A.C.E. Trading*, 903 A.2d at 348 (finding that a machine that accepted money and dispensed coupons which offered consumers a chance to win cash prizes constituted an "illegal 'gaming device[]'"); *see also* MD. Code Crim. Law § 12-110 (defining "slot machine" in part as "a machine, apparatus or device that: operates or can be made to operate by inserting, depositing, or placing with another person money, a *token*, or *another object*. . ." (emphasis added).

Second, even if that weren't the case (it is), Maryland courts are required to interpret gambling statutes liberally "so as to prevent the mischiefs intended to be provided against." *One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d at 956. The Maryland Loss Recovery Statute was intended to offer a powerful mechanism for deterrence of illegal gambling by allowing recovery of unlawful gambling losses at devices such as Defendant's. *See LaFontaine v. Wilson, to Use of Ugast*, 45 A.2d 729, 734 (Md. 1946) (determining that an earlier version of the same "Maryland Statute authorizes recovery by

---

[17]     Defendant's strict and limited understanding of the statute would also preclude recovery of gambling losses incurred through a player's use of credit and tokens, both of which are understood by the statute to be used for gambling purposes at such machines. Indeed the statute itself understands that a gaming device may be played for "any other thing or consideration of value[.]" *See* Md. Code Ann., Crim. Law § 12-101.

the person placing a wager with money embezzled, regardless of title to the funds lost."). Thus, courts should not find that the mere conversion of currency into tokens or Casino Chips precludes recovery on the basis that a player lost "chips" as opposed to "money," *see Clerk of Circuit Court for Calvert Cnty. v. Chesapeake Beach Park, Inc.*, 248 A.2d 479, 483 (Md. 1968), ("[W]henever the Legislature enacted statutes having for their object the repression of gambling . . . the courts should so construe them as to give validity not only to the word, but to the spirit of the law."),[18] as such a finding would allow all slot machine operators to evade liability by simply converting real-world money into some other thing of value before a wager. *See One Hundred & Fifty-Eight Gaming Devices*, 499 A.2d at 944-45 (finding devices to be illegal where they operate from the "insertion of coins *or some other payment of consideration*."); *CCI Entm't, LLC v. State*, 81 A.3d 528, 537 (Md. Ct. Spec. App. 2013) (finding devices to be illegal where players exchanged cash for "credits" and could "play the game so long as he or she had sufficient credits—i.e., had entered the required payment into the system, or had accumulated enough winnings to continue playing.").[19]

Accordingly, Plaintiff has pleaded a valid claim under Maryland's Loss Recovery Statute.[20]

## IV. PLAINTIFF STATES A VALID CLAIM FOR UNJUST ENRICHMENT.

Finally, Machine Zone argues that Mason's claim for unjust enrichment must fail because she

---

[18]   Additionally, Plaintiff goes beyond alleging that the Chips and Gold gambled and lost were simply representative of money or currency. Plaintiff alleges that the Chips and Gold lost had *actual real world value* by merit of their ability to be sold and exchanged. (*See, e.g.,* Compl. ¶¶ 3, 37-42.)

[19]   Defendant again argues here that the outcome of the Casino was not like a "real world casino, since the result was always a win." (Def. Mot. at 19.) That is simply not true. Every time Plaintiff and the Class members wagered Chips, they took on the risk that they would receive something of lesser value (e.g., wood.) *Supra* II.A.

[20]   Defendant also attempts to insulate itself from liability by suggesting that Plaintiff, and all other members of the putative class, would be in violation of the law for exercising their statutory right to recover their gambling losses. However, the focus of the statute is on preventing companies like *Defendant* from profiting from illicit gambling and to allow harmed individuals to recover for the *defendants'* unlawful conduct. That plaintiffs would be subject to criminal liability for vindicating statutory rights explicitly provided to them by the legislature makes no sense. *See Cates v. State*, 320 A.2d 75, 80 (Md. 1974) ("The evident public policy expressed in this statute is not to help one who loses at gambling, but to discourage illegal gambling by putting the winner [the casino] on notice that the courts will lend their aid to force him to disgorge his winnings").

27

received precisely what she bargained for, and therefore could not have suffered an injury. (Def. Mot. at 21.) As an initial matter, and as discussed in Section II.B.i, Defendant fails to understand the benefit that was bargained for in the transaction. Plaintiff bargained for the use of a legal video game, but Defendant instead provided her with an unlawful gambling device. As such, she did not receive—and Defendant could not actually provide—the benefit for which she bargained.

That aside, Plaintiff properly pleads a claim for unjust enrichment under both Maryland and California law. A plaintiff states a claim for unjust enrichment under Maryland law by demonstrating that (i) a benefit was conferred upon the defendant by the plaintiff, (ii) the defendant knows of or appreciates the benefit, and (iii) the defendant accepted or retained the benefit under circumstances that make its continued retention of the benefit inequitable without the payment of its value. *See Hill v. Cross Country Settlements, LLC*, 936 A.2d 343, 351 (Md. 2007). Similarly, a plaintiff states a claim for unjust enrichment under California law when the defendant receives a benefit and it is unjust for the defendant to retain that benefit at another's expense. *See Keilholtz v. Superior Fireplace Co.*, No. 08-cv-00836, 2009 WL 839076, at *4 (N.D. Cal. Mar. 30, 2009). In the end, unjust enrichment serves to "deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits quite honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." *Dep't of Hous. & Cmty. Dev. v. Mullen*, 886 A.2d 900, 921 (Md. Ct. Spec. App. 2005).

Here, Plaintiff alleges, and Machine Zone does not dispute, that she conferred a benefit upon Machine Zone by paying for Gold and subsequently having her Chips and/or Gold withdrawn from her account every time she used the Casino. Machine Zone knowingly accepted Plaintiff's money, Chips, and Gold and, indeed, has logs identifying exactly when and how much—i.e. *defendant's knowledge or*

*appreciation of the benefit.* (Compl. ¶ 30.) Because Machine Zone induced Mason into unknowingly

conferring this benefit through an unlawful gaming device, its continued retention of the benefit is

inequitable. *See* Md. Code Ann. Crim. Law § 12-104 (making it illegal to deal, manage, or have an

interest in a gaming device or the profits of a gaming device); Cal. Pen. Code § 330b. As such,

principles of equity require that Machine Zone be prohibited from retaining the benefit it has received.

*See Consum. Prot. Div. v. Morgan*, 874 A.2d 919, 945 (Md. 2005) (awarding profits arising from

unlawful conduct as restitution in unjust enrichment action); *Jackson v. 2109 Brandywine, LLC*, 180

Md. App. 535, 575, 952 A.2d 304, 327 (2008) ("A person who receives a benefit by reason of an

infringement of another person's interest, or of loss suffered by the other, owes restitution to him in the

manner and amount necessary to prevent unjust enrichment.").[21]

Accordingly, Plaintiff's unjust enrichment claim likewise survives.[22]

## CONCLUSION

For the foregoing reasons, Plaintiff Mia Mason, respectfully requests that the Court enter an

Order (i) denying Machine Zone's motion to dismiss in its entirety, (ii) requiring Machine Zone to

answer her Complaint, and (iii) awarding such other and further relief as the Court deems reasonable

---

[21]      Nevertheless, Defendant still argues that Plaintiff cannot recover for unjust enrichment because Maryland's Loss Recovery Statute is the sole remedy for recovering gambling losses. (Def. Mot. at 22.) That argument fails for two reasons. First, it disregards that plaintiffs can—and regularly do—bring claims in the alternative to one another. *See* Fed. R. Civ. P. 8(a) (recognizing that a plaintiff's claims "may include relief in the alternative…."). And second, it relies on *Cates v. State* 320 A.2d 75, 82 (Mc. Ct. Spec. App. 1974), an entirely distinguishable case that considers whether the use of self-help and violence are appropriate methods of recovering gambling debts, not whether otherwise meritorious claims are appropriate alternative methods to Maryland's statutory loss recovery scheme.

[22]      Defendant also requests judicial notice of "[a] printout from a page of the website http://www.gowfacentral.com, which is referenced in Plaintiff's Complaint at page 12 n.14" and "[s]ix additional screenshots from Game of War that are substantially similar to the seven screenshots Plaintiff references in her Complaint…" (Dkt. 8 at 1.) Though Plaintiff obviously does not object to the printout from http://www.gowfacentral.com that is cited in the Complaint, she does object to consideration of the seven screenshots as they are not referenced in, referred to, or otherwise relied upon in her Complaint and Plaintiff has not had an opportunity to test their authenticity, and thus disputes it. *Schultz v. Braga*, 290 F. Supp. 2d 637, 651 n.8 (D. Md. 2003).

and just.

Respectfully submitted,

**MIA MASON**, individually and on behalf of all others similarly situated,

Dated: August 13, 2015

By: _____/s/_____
   One of Plaintiff's Attorneys

Maria C. Simon
MD Bar Number 17238
msimon@thegellerlawgroup.com
THE GELLER LAW GROUP
4000 Legato Road, Suite 1100
Fairfax, Virginia 22033
Tel: 703.679.7067
Fax: 703.259.8584

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Courtney C. Booth*
cbooth@edelson.com
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro Hac Vice admission to be sought

## CERTIFICATE OF SERVICE

     I, Maria C. Simon, an attorney, hereby certify that on August 13, 2015, I served the above and foregoing ***Plaintiff's Response to Defendant Machine Zone's Motion to Dismiss***, by causing true and accurate copies of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 13th day of August, 2015.

Thomas D. McSorley
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, D.C. 20004

Sean Morris
Arnold & Porter LLP
44th Floor, 777 South Figueroa Street
Los Angeles, CA 90017-5844

Michael A. Berta
Arnold & Porter LLP
10th Floor, Three Embaracadero Center
San Francisco, CA 94111-4024


_____/s/_____
Maria C. Simon

31