**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | : | |
| **MIA MASON, individually, and on behalf of all others similarly situated,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **CIVIL ACTION NO. 1:15-cv-01107-JKB** |
| **v.** | : | |
| | : | |
| **MACHINE ZONE, INC.,** | : | |
| | : | |
| **Defendant.** | : | **Oral Argument Requested** |
| | : | |

## DEFENDANT MACHINE ZONE, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

I.     EACH OF PLAINTIFF'S CLAIMS FAILS BECAUSE THERE IS NO
GAMBLING LOSS OR ECONOMIC INJURY. ................................................. 1

     A.    Plaintiff's UCL Claim (Count II) Fails. ..................................................... 2

     B.    Plaintiff's Claim Under the Maryland Loss Recovery Statute (Count
IV) Fails. ................................................................................................... 7

     C.    Plaintiff's Claim for Unjust Enrichment (Count III) Fails........................ 9

II.    PLAINTIFF'S UCL CLAIM FAILS FOR ADDITIONAL REASONS. ............. 10

     A.    GoW Is Not An Illegal Machine or Device Under California's Penal
Code. ....................................................................................................... 10

          1.    *GoW Is Not a Machine or Device.* ................................................ 10

          2.    *GoW Is Predominantly a Game of Skill.* ....................................... 11

     B.    Allowing Plaintiff to Recover Her Purported Gambling Losses Would
Be Against California's Public Policy. ...................................................... 12

     C.    Plaintiff, a Non-California Resident, Lacks Standing to Bring a UCL
Claim....................................................................................................... 14

III.   PLAINTIFF CONCEDES THAT SHE LACKS STANDING TO ENFORCE
CALIFORNIA PENAL CODE SECTION 330b (COUNT I)............................ 16

REQUEST FOR HEARING................................................................................................ 16

CONCLUSION................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC,*
  929 F. Supp. 2d 502 (D. Md. 2013) ...................................................................9

*Alves v. Players Edge, Inc.,*
  No. 05CV1654 WQH (CAB), 2007 WL 6004919 (S.D. Cal. Aug. 8, 2007) .........13

*Badella v. Deniro Mktg. LLC,*
  No. C 10-03908 CRB, 2011 WL 5358400 (N.D. Cal. Nov. 4, 2011)....................14

*Cannon v. Wells Fargo N.A.,*
  917 F. Supp. 2d 1025 (N.D. Cal. 2013) .............................................................15

*Chaset v. Fleer/Skybox Int'l, LP,*
  300 F.3d 1083 (9th Cir. 2002) ...........................................................................5

*Citaramanis v. Hallowell,*
  328 Md. 142, 613 A.2d 964 (1992) ....................................................................9

*Claridge v. RockYou, Inc.,*
  785 F. Supp. 2d 855 (N.D. Cal. 2011) ............................................................3, 4

*Comet Theatre Enters., Inc. v. Cartwright,*
  195 F.2d 80 (9th Cir. 1952) ..............................................................................9

*Ehret v. Uber Technologies, Inc.,*
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..............................................................15

*Gross v. Symantec Corp.,*
  No. C 12-00154 CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012)...................15

*Hall v. Time Inc.,*
  158 Cal. App. 4th 847 (2008) .....................................................................3, 4, 5

*Humphrey v. Viacom, Inc.,*
  No. 06 2768 (DMC), 2007 WL 1797648 (D.N.J. June 20, 2007) .....................8, 9

*In re iPhone 4S Consumer Litigation,*
  No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) .....................15

*In re Static Random Access Memory (SRAM) Antitrust Litig.,*
  580 F. Supp. 2d 896 (N.D. Cal. 2008) ..............................................................14

*Jamgotchian v. Scientific Games Corp.,*
  371 F. App'x 812 (9th Cir. 2010) .....................................................................13

*Kelly v. First Astri Corp.,*
  72 Cal. App. 4th 462 (1999) ............................................................................13

*Kwikset Corp. v. Superior Court,*
   51 Cal. 4th 310 (2011) ...............................................................................................3

*Lucky Bob's Internet Café, LLC v. Cal. Dep't of Justice,*
   No. 11-CV-148 BEN (JMA), 2013 WL 1849270 (S.D. Cal. May 1, 2013)...................7, 8, 11

*Martin v. Citizens' Bank of Marshallville,*
   171 S.E. 711 (Ga. 1933)..............................................................................................9

*People ex rel. Green v. Grewal,*
   61 Cal. 4th 544 (2015) ...........................................................................................10, 11

*Peterson v. Cellco P'ship,*
   164 Cal. App. 4th 1583 (2008) .............................................................................4, 6, 9

*Price v. Pinnacle Brands, Inc.,*
   138 F.3d 602 (5th Cir. 1998) (per curiam)..................................................................5

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.,*
   17 Cal. 4th 553 (1998) ..............................................................................................13

*Talk N Win, Inc. v. Harris,*
   No. CV F 13-0971 LJO SMS, 2013 WL 6198939 (E.D. Cal. Nov. 27 2013) .........................11

## Statutes

Cal. Bus. & Prof. Code
   § 17200..................................................................................................................13
   § 17204....................................................................................................................2

Cal. Penal Code
   § 330b...........................................................................................6, 10, 11, 14, 16

Md. Code Ann., Crim. Law § 12-110 ............................................................................7

## Other Authorities

Apple, App Review, https://developer.apple.com/app-store/review/ (last visited
   Sept. 9, 2015) .........................................................................................................2

Google, Core App Quality, http://developer.android.com/distribute/essentials/
   quality/core.html (last visited Sept. 9, 2015) ...............................................................2

**INTRODUCTION**

When a customer enters an actual casino and hands over $20 for chips, the monetary transaction with the casino is just beginning.  By playing one of the casino games with those chips, the customer puts her $20 at risk and has a chance to emerge with more money (sometimes much more) than she walked in with, with nothing, or with something in between.  That's gambling.

With Game of War ("GoW"), once a customer decides that instead of playing the game entirely for free as she could, she would rather purchase Gold to try to advance more quickly, the monetary transaction with GoW is over.  She's contractually guaranteed never to emerge from the game with any money or anything else she can use in the real world.  That customer instead has made a choice to spend money in exchange for playing a game the way she wants to.  That's not gambling; that is a purchase in exchange for a gaming experience.

As explained in Machine Zone's opening brief ("Mot."), the nature of the transaction thus means that plaintiff has suffered no gambling loss or any economic injury at all.  Plaintiff has received, as have all GoW players, the benefit of the (non-gambling) bargain.  This defeats each of Plaintiff's causes of action.  For this reason and the other reasons discussed herein and in Machine Zone's opening papers, Plaintiff cannot sustain her causes of action as a matter of law and they are properly dismissed.

**ARGUMENT**

**I.     EACH OF PLAINTIFF'S CLAIMS FAILS BECAUSE THERE IS NO GAMBLING LOSS OR ECONOMIC INJURY.**

GoW is a complex game of skill and strategy.  Users attempt to build empires by making alliances with other players, deciding when, if and how to attack enemy players and monsters and by strategically developing and maintaining advantageous combinations of myriad resources

such as building materials, weapons, troops and gold.  Compl. ¶¶ 1-2, 12, 28 & n.4.  Plaintiff plucks out one incidental feature of this complicated game to allege that she suffered gambling losses.  But GoW is not gambling and Plaintiff has suffered no loss.

GoW is a software application that individuals can download from the Apple App Store or Google Play Store onto their iOS or Android devices.  *See* Compl. ¶ 54 (explaining that GoW is "installed on mobile devices (*e.g.*, Apple iPhone or iPads) to operate as discrete terminals where players can wager").  As such, GoW is subject to Apple and Google's strict developers guidelines.  *See* Apple, App Review, https://developer.apple.com/app-store/review/ (last visited Sept. 9, 2015); Google, Core App Quality, http://developer.android.com/distribute/essentials/ quality/core.html (last visited Sept. 9, 2015).  GoW users can play the game for free, or spend money to enhance their fantasy game experience by purchasing Gold, which is convertible into other in-game resources.  *See* Compl. Ex. A § 5.  For example, a player may convert Gold into wood or stone from which she can construct buildings.  Compl. ¶¶ 2, 20.  Or a player can convert Gold into Chips in the Casino, where every "spin" guarantees that the player can exchange chips for at least one of a number of identified in-game resources.  Compl. ¶¶ 2, 27-28.  Users do not pay for the chance to win anything of value outside of GoW, nor is any portion of the money users spend on in-game resources ever paid back out.

Because of this, each of Plaintiff's claims fail.

## A.      **Plaintiff's UCL Claim (Count II) Fails**.

To plead a claim under the UCL, a private plaintiff must demonstrate "injury in fact" and that he "has lost money or property as a result of the unfair competition."  Cal. Bus. & Prof. Code § 17204.  When California voters added this language to the UCL in 2004, the result "was unequivocally to narrow the category of persons who could sue businesses under the UCL" by restricting the UCL's historically "broad grant of standing [that] had encouraged '[f]rivolous

unfair competition lawsuits [that] clog our courts . . . .'"  *Hall v. Time Inc.*, 158 Cal. App. 4th

847, 853 (2008) (quoting "Findings and Declarations of Purpose" of Proposition 64).  By

requiring a private plaintiff to demonstrate injury in fact, California has limited the "abuses [of

the prior statute] by 'prohibit[ing] private attorneys from filing lawsuits for unfair competition

where they have no client who has been injured in fact . . . .'"  *Id.* at 854.

To satisfy these "narrow standing requirements," a plaintiff must "(1) establish a loss or

deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and

(2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice

or false advertising that is the gravamen of the claim."  *Kwikset Corp. v. Superior Court*, 51 Cal.

4th 310, 322 (2011).

Plaintiff cannot satisfy this standard.  Plaintiff argues that she has suffered two types of

economic injury: (1) that she lost money that she claims she "wagered" in the Casino; and

(2) that she did not receive the benefit of her bargain because she "unknowingly" played an

unlawful game.  Plaintiff's Response to Motion to Dismiss ("Resp.") at 18-19.  Neither argument

establishes a cognizable injury under the UCL.

First, Plaintiff argues she has suffered an injury or loss based on her allegation that she

"has lost more than $100 wagering at Defendant's Casino," through "typically $.60 per spin."

Resp. at 18, 24 (citing Compl. ¶43).  In other words, Plaintiff asserts that her loss is comprised of

*all* of the money she spent to purchase Gold that she then converted to Chips, which in turn were

converted to in-game resources at the Casino.

Plaintiff cites *Claridge v. RockYou, Inc.*, 785 F. Supp. 2d 855, 862 (N.D. Cal. 2011) to

suggest that she need only allege that she "parted, deliberately or otherwise, with some

identifiable sum formerly belonging to h[er] or subject to h[er] control; it has passed out of h[er]

hands by . . . being . . . ceded in a gamble." Resp. at 18.  Plaintiff's reason for citing *Claridge* is

unclear other than perhaps the fact that it says the word "gamble."  *Claridge* was a data privacy

case (brought by some of the same lawyers who bring the case here) in which plaintiff alleged a

loss of money or property under the UCL after his personal information was comprised based on

defendant's alleged failure to safeguard that information.  After noting earlier in the opinion that

the "plaintiff admits to advancing a novel theory of damages for which supporting case law is

scarce," the court ultimately *dismissed* the plaintiff's UCL claim, concluding that plaintiff's

allegation that his personal information was a form of "currency" that could be "lost" "strains the

acceptable boundaries of 'injury' under the statute."  785 F. Supp. 2d at 863.  Thus, *Claridge* is

of no help to Plaintiff.

Indeed, Plaintiff's arguments fail to recognize the difference between a "purchase" and a

"loss."  "In plaintiffs' view, a person has lost money when the money is 'no longer in their

possession.'"  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1592 (2008).  But such a

definition would "encompass[] every purchase or transaction where a person pays with money."

*Id.*  Rather, a "loss," for purposes of the UCL requires that the plaintiff be deprived of economic

value not just for purchasing a product or service, but for parting with money in a manner that

was not part of the bargained transaction.  *E.g.*, *id.* (loss for standing includes parting with value

"in an unexpected or relatively unpredictable way") (quoting *Hall*, 158 Cal. App. 4th at 853).

Yet, a bargained-for purchase transaction is exactly what is at issue here.  Plaintiff paid

for and received Gold.  Once she purchased that Gold, she was free to use it in any way she

wanted within the game, but could not convert it back to actual currency.  *See* Compl. Ex. A

§ 2(p); 4.  She therefore could use that Gold to play the game by acquiring other virtual resources

(including "Casino" Chips).  With that Gold and resources, she could try to decide how best to

advance in the game and try to do better than other players.  That plaintiff might have used her

Gold differently within GoW (or might do so next time) does not mean she has a recoverable

economic loss.

Put simply, Plaintiff does "not allege that [she] received something different than

precisely what [she] bargained for . . . ."  *Chaset v. Fleer/Skybox Int'l, LP,* 300 F.3d 1083, 1087

(9th Cir. 2002) (quoting *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) (per

curiam)); *see also Hall*, 158 Cal. App. 4th at 855 (plaintiff "expended money by paying Time

$29.51—but he received a book in exchange. He did not allege he did not want the book, the

book was unsatisfactory, or the book was worth less than what he paid for it").

*Chaset*, cited in Machine Zone's opening brief, is instructive on this point.  In *Chaset*,

sports and entertainment card purchasers brought suit against defendant trading card

manufacturers.  Plaintiffs alleged the manufacturers had committed unlawful gambling in

violation of RICO because consumers purchased their card packs in exchange for the chance that

those packs would contain rare "insert" card(s), which were valuable on the secondary market

for trading cards at conventions, stores, and on the Internet.  300 F.3d at 1086.  The Ninth Circuit

affirmed dismissal of plaintiffs' claims based on their failure to plead injury, holding that:

> We agree with those courts, with the district court, and with all other courts that
> have considered this issue. Purchasers of trading cards do not suffer an injury
> cognizable under RICO when they do not receive an insert card. At the time the
> plaintiffs purchased the package of cards, *which is the time the value of the
> package should be determined, they received value—eight or ten cards, one of
> which might be an insert card—for what they paid as a purchase price*. Their
> disappointment upon not finding an insert card in the package is *not an injury to
> property*.

*Id.* at 1087 (emphases added).

The same is true here.  Plaintiff's retort that *Chaset* is inapposite because Plaintiff "(i)

purchased the Gold directly from Defendant Machine Zone and (ii) was promised something of

value in return for her legal wager" (Resp. at 19 n.10) misses the point and does not respond to the court's holding that receiving something of value in exchange for consideration does not amount to a loss.

Plaintiff also attempts to argue that she suffered injury because she "entered into a bargain for the opportunity to play what she believed was a *legal* video game" but then received "the opportunity to unknowingly utilize 'an illegal game of chance camouflaged as a benign videogame.'"  Resp. at 19 (citing Compl. ¶¶2, 21).  This is not a tenable theory; even if GoW were illegal (which it is not), that does not automatically mean that Plaintiff has suffered any economic injury by playing it (as opposed to playing a "legal" game).

The Court in *Peterson* addressed—and rejected—a similar argument.  In *Peterson*, the plaintiffs had purchased insurance policies from defendants who lacked a license to offer or sell insurance in violation of the California Insurance Code.  *Peterson*, 164 Cal. App. 4th at 1586.  In that case, plaintiffs alleged that they "suffered injury in fact and lost money to defendant as a direct result of defendant's unlawful activities because if defendant had not offered [and] sold . . . insurance when it was not . . . licensed to do so, plaintiffs would not have purchased the . . . insurance from defendant."  *Id.* at 1587.  These allegations are similar to the argument Plaintiffs makes here: "but for Machine Zone's violation of § 330b, the injury would not have occurred, as Plaintiff would not have been able to unknowingly access the illegal device."  Resp. at 18.  The court in *Peterson* dismissed plaintiffs' UCL and unjust enrichment claims because, despite the alleged violation of the Insurance Code, plaintiffs "received the benefit of their bargain, having obtained the bargained for insurance at the bargained for price" and thus suffered no injury.  164 Cal. App. 4th at 1591.  Similarly, here, Plaintiff received the benefit of her

bargain, having decided to use her real money to buy virtual Gold (which could not revert back to "real money") and then traded these resources for another resource.

Having suffered no economic injury by playing GoW, Plaintiff's UCL claim fails.

**B.      Plaintiff's Claim Under the Maryland Loss Recovery Statute (Count IV) Fails.**

Just as the UCL requires an actual "injury in fact and a loss of money," Maryland's criminal law providing for the recovery of gambling losses, requires that a person "loses money" due to gambling.  Md. Code Ann., Crim. Law § 12-110.  As described above, Plaintiff has suffered no gambling loss here.

Plaintiff purchased Gold to enhance her gaming experience.  Once she made her purchase, her economic transaction with Machine Zone was over.  She did not "lose" any money while gambling, because she did not have any money at risk in the game; once she purchased her Gold, she had no opportunity for money to be returned.  The only money she "lost," was when she purchased the Gold—but that is not a gambling loss or damage of any type, since she received exactly what was offered by Machine Zone in exchange for her money.  She made a purchase and received what she bought.

Recognizing that GoW provides no opportunity to "cash out" from the game, Plaintiff attempts to rely on the existence of an alleged "secondary market where consumers across the country buy and sell Game of War accounts for actual money."  Resp. at 9.  A "secondary market" does not convert Plaintiff's transaction of purchasing Gold into a "gambling loss" against GoW.  Any sale on the secondary market is not, as Plaintiff argues, cashing out winnings "in the typical casino-sense."  *Id.*

In the case of a typical casino, it is *the operator of the device* and the same entity who stands to benefit from the gambling proceeds that pays out the cash or prizes.  *See, e.g.*, *Lucky*

*Bob's Internet Café, LLC v. Cal. Dep't of Justice*, No. 11-CV-148 BEN (JMA), 2013 WL

1849270, at *1 (S.D. Cal. May 1, 2013) (explaining that the prizes were paid out from the pool

of money consumers spent to purchase internet time and which enrolled them in the

sweepstakes).  Here, Plaintiff does not and cannot contend that Machine Zone ever pays out cash

or other real-world prizes to its users.  Indeed, as Machine Zone noted in its opening brief, its

Terms of Service expressly prohibit the buying or selling of any currency in exchange for "real

world" money or other items of value, and further, that attempts to transfer one's account

subjects a user to immediate suspension or cancellation of her account without refund.  *See*

Compl. Ex. A § 2(p); 4.[1]

     *Humphrey v. Viacom, Inc.*, No. 06 2768 (DMC), 2007 WL 1797648, at *10 (D.N.J. June

20, 2007) highlights this distinction between a purchase and "gambling loss."  There, plaintiffs

sought to recover under similar loss recovery statutes the fees they paid to participate in an

online fantasy sports league.  The court granted defendants' motion to dismiss, finding, among

other things, that plaintiffs did not suffer any gambling loss:

> No fantasy league participant suffered any such "loss." To the contrary,
> participants pay Defendants a one-time, non-refundable entry fee to participate in
> the leagues, and receive in consideration for that fee the benefit of Defendants'
> extensive administrative, statistical and analytical services throughout the relevant
> sports season. Only at the end of the sports season are prizes awarded, in amounts
> fixed by the contracts that govern participation in the leagues. Accordingly, in
> paying for the right to participate in the leagues and receive Defendants' services,
> participants simply do not "lose" anything, and certainly suffer no cognizable
> "gambling" loss. Whether or not a participant is a successful league manager,
> their entry fee never hangs in the balance in any way in connection with their
> participation in the league.  Indeed, once participants have selected their team and

---

[1] Moreover, Plaintiff does not refute and therefore concedes that she never sold or attempted to
sell her GoW account on the secondary market.  *See* Mot. at 19 n.4.  The fact that some users
(but apparently not the Plaintiff here) have chosen to sell their accounts on a secondary market
that exists wholly independent from Machine Zone, and in doing so, breach their agreement with
Machine Zone, does not convert GoW into an illegal gambling device.  GoW players simply do
not and cannot wager for a chance at real world winnings.

> begin their season, the fee cannot be recovered. There is no "loss" on these facts, and this exchange of consideration is an "ordinary contract," in which "both parties may ultimately gain by entering into the agreement."  *Martin v. Citizens' Bank of Marshallville*, 171 S.E. 711, 713 (Ga. 1933).

*Id.* at *10 (citation omitted).

The same reasoning applies here.  The money Plaintiff spent to purchase virtual Gold "never hung in the balance" and there can be no gambling loss if Plaintiff never had the chance of getting that money back.  *Id.*  This is a transaction—an "ordinary contract" involving an "exchange of consideration."  *Id.*  There is no loss whatsoever, and certainly no gambling loss for which Plaintiff is entitled to recover.

**C.    Plaintiff's Claim for Unjust Enrichment (Count III) Fails.**

For the same reasons discussed above, Plaintiff's unjust enrichment claim also fails. Given that Plaintiff lacks standing under the UCL, she cannot bring that same claim "under the guise of unjust enrichment."  *Peterson*, 164 Cal. App. 4th at 1595-96.  And, there can be no unjust enrichment where Plaintiff has "received everything that [she] bargained for."  *Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 535 (D. Md. 2013). This is so even though Plaintiff may claim that the underlying conduct is unlawful.  Thus, in *Citaramanis v. Hallowell*, 328 Md. 142, 159, 613 A.2d 964, 972 (1992), plaintiffs sought to obtain restitution of rent paid pursuant to what they contended was an illegal and unenforceable lease.  But, according to the court, "even if the lease were unenforceable by the landlords, the tenants have received everything that they bargained for, and a necessary element justifying the remedy of restitution, *i.e.*, unjust enrichment, is lacking."  *Id.*

So too here.  Plaintiff has gotten "the exchange which [s]he expected" and thus "[t]here is no equitable reason for invoking restitution."  *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952).

**II.     PLAINTIFF'S UCL CLAIM FAILS FOR ADDITIONAL REASONS.**

    **A.     <u>GoW Is Not An Illegal Machine or Device Under California's Penal Code</u>.**

       Even beyond Plaintiff's failure to allege a loss or injury, her UCL claim nevertheless fails because she does not sufficiently allege that GoW or the Casino itself is an illegal "slot *machine or device*" under the California Penal Code.  Machine Zone has already explained the numerous reasons why neither GoW nor the Casino itself is a machine or device covered by that statute and that GoW is predominantly a game of skill, not a game of chance.  *See* Mot. at 9-13; 19-20.  Not one of the authorities upon which Plaintiff relies supports a different conclusion.

               1.     *GoW Is Not a Machine or Device.*

       Plaintiff contends that GoW is a "device" prohibited by California Penal Code § 330b. Resp. at 11-12.  Not so.  GoW is an app—software—that individuals may choose to download to their Apple or Android device from the Apple App Store or Google Play Store.  *See* Compl. ¶ 54 (explaining that GoW is "installed on mobile devices (*e.g.*, Apple iPhone or iPads) to operate as discrete terminals where players can wager").  GoW is not a device and, contrary to Plaintiff's assertions, the relevant case law does not countenance ignoring the plain language of the statute.

       Plaintiff's reliance on *People ex rel. Green v. Grewal*, 61 Cal. 4th 544 (2015) to argue that software constitutes a device prohibited by 330b (Resp. at 11-12) is misplaced.  In *Grewal*, defendants were the operators of internet cafés who were in possession of the physical computer terminals—devices—used to participate in the illegal sweepstakes; they were *not* the software companies that "provided the computer software system that operated defendants' sweepstakes programs, including the computer sweepstakes games."  *Grewal*, 61 Cal. 4th at 553.  It was the device that gave rise to liability.  Rejecting defendants' argument that the device must "itself generate the chance or unpredictable outcome at the time the customer plays the game" (*id.* at 561), the Court found that the terminals were "part of an integrated system or apparatus wherein

the various parts or components work together so as to operate in a manner that *does* constitute

an unlawful slot machine or device." *Id.* at 562.  There is simply no suggestion in *Grewal* that

the devices themselves—*i.e.,* the terminals operated by the internet café operators—were

optional components of the integrated system found to be prohibited.  The same is true of *Talk N

Win, Inc. v. Harris*, in which law enforcement seized property (including 70 computer terminals)

from the operator of an internet café similar to those at issue in *Grewal*.  No. CV F 13-0971 LJO

SMS, 2013 WL 6198939, at *4 (E.D. Cal. Nov. 27 2013).

   *Lucky Bob's Internet Café, LLC v. California Department of Justice*, is no different.

There too, defendants were the owners of internet cafés who operated a sweepstakes gaming

system developed by a third-party.  No. 11-CV-148 BEN (JMA), 2013 WL 1849270, at *1 (S.D.

Cal. May 1, 2013).  The Court found that the sweepstakes system was an illegal gambling device

where "[c]ustomers operated the system by depositing cash into a sales *terminal* and receiving a

coded card . . . that could be revealed on a player *terminal* by swiping the card in the card

reader." *Id.* at *3 (emphases added).

   Contrary to Plaintiff's assertions, these cases do not demonstrate that software, standing

alone, falls within the plain language of a machine or device required for liability under 330b.

   2.   *GoW Is Predominantly a Game of Skill.*

   Machine Zone demonstrated in its opening brief how GoW is predominantly a game of

skill and thus falls under an express exclusion from the definition of "slot machine or device."

Mot. at 11-13.  In response, Plaintiff does not dispute that GoW is a game of skill.  Instead,

Plaintiff argues that one should look to the Casino itself rather than GoW as a whole to

determine whether it is a game of chance or is "predominantly a game of skill" and thus

excluded from California's definition of slot machine or device.  Resp. at 15.  In doing so,

Plaintiff analogizes the Casino element of GoW to a physical slot machine being surrounded by

games of skill.  That is not the proper analogy.  The proper analogy is the "[p]inball and other amusement machines or devices" that Plaintiff acknowledges are expressly excluded from the definition of a slot machine.  Resp. at 15 & n.7.

Just as pinball machines require "the intentional, thoughtful, and active use of flippers to play" (*id.*), GoW as a whole requires the intentional, thoughtful, and active participation in various aspects of the game to improve one's kingdom, such as by accumulation and strategic use of virtual resources within the game.  The exchange of resources offered by the Casino is one optional feature of the game, and there is simply no authority to suggest that a plaintiff can narrow its focus to only one feature of a game as a whole, argue that that one feature has an element of chance associated with it, and then argue that the game is thus converted to gambling.  If Plaintiff was correct that one can excise a portion of the game, then the entire express statutory pinball exclusion and its reference to something being "predominantly" a game of skill would be meaningless.  It is indisputable that pinball games can and do offer a feature, such as a "match," that gives a random chance for a free play.  If a single chance-based feature was sufficient to convert a game into gambling, as Plaintiff argues, then Plaintiff would be reading this express exclusion out of the statute.  For the same reason, one cannot excise the Casino from GoW in considering whether the game at issue is one of chance or predominantly one of skill.  *See* Mot. at 12-13.  Because Plaintiff's argument depends on vitiating express statutory language, Plaintiff's claim that GoW is gambling must fail as a matter of law.

**B.      Allowing Plaintiff to Recover Her Purported Gambling Losses Would Be Against California's Public Policy.**

As described above and in the opening brief, there are no gambling losses here.  But even if there were, Plaintiff cannot recover her supposed gambling losses because it would be against California's public policy.  Plaintiff concedes that "courts typically do not aid parties in

enforcing gambling contracts" unless there is a statute allowing such recovery (Resp. at 22), but then incorrectly suggests that the UCL is one such statute. It is not.

When the California Court of Appeals held in *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 489 (1999) that "[t]he Legislature has not enacted a statute permitting the use of the process of the courts in California to resolve the kind of gambling loss claims asserted," it did so in 1999, long after the enactment of the UCL. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal. 4th 553, 570 (1998) (noting that the Legislature created the modern UCL in 1933 and moved it to section 17200 of the Business and Professions Code in 1977). Thus, if the UCL were in fact intended by the California Legislature to allow recovery of one's supposed gambling losses, the court in *Kelly* and the many cases following it would have held as such. *See, e.g.*, *Jamgotchian v. Scientific Games Corp.*, 371 F. App'x 812, 813 (9th Cir. 2010) (relying on *Kelly* to bar civil claims arising out of alleged gambling contracts, concluding that it must do so absent "convincing evidence that the California Supreme Court would overrule the California Court of Appeal's decision in *Kelly*").

Significantly, Plaintiff has pointed to no case permitting recovery of gambling losses under the UCL (or any statute for that matter). This is not surprising given that courts have expressly rejected attempts to recover gambling losses under the UCL. *See Alves v. Players Edge, Inc.*, No. 05CV1654 WQH (CAB), 2007 WL 6004919, at *14 (S.D. Cal. Aug. 8, 2007) (dismissing as prohibited by *Kelly* claims for unfair competition where allegations in complaint "detail a betting program in which Plaintiffs voluntarily engaged and allegedly suffered losses")). In short, Plaintiff cannot recover under the UCL what California's public policy so clearly prohibits. Her request to do so here should be rejected.

**C.**     **Plaintiff, a Non-California Resident, Lacks Standing to Bring a UCL Claim.**

As Machine Zone demonstrated in its opening brief, Plaintiff is not entitled to bring a

claim under the UCL because she fails to allege either that her alleged injury or the allegedly

unlawful conduct occurred in California.  Mot. at 15-16.  In her Response, Plaintiff does not

refute Machine Zone's argument that any purported injury in the form of "gambling losses"

would have occurred in Maryland (Mot. at 15; Resp. at 21), and therefore attempts to argue that

the allegedly unlawful conduct emanated from California.  Specifically, Plaintiff argues that

Machine Zone's conduct occurred in California because Machine Zone "owns or possesses the

Casino in violation of § 330b" which Plaintiff says Machine Zone does "at its headquarters in

California."  Resp. at 20 (citing Compl. ¶ 6, Ex. A) (emphasis omitted).  But the cited allegations

say no such thing, and even if they did, they would be insufficient.

The sum and substance of Plaintiff's allegations is that Machine Zone "is a corporation

existing under the laws of the State of Delaware, with its principal place of business located at

555 Hamilton Avenue, Palo Alto, California 94301.  Machine Zone conducts business in the

State of Maryland, this District, and nationwide."  Compl. ¶ 6.  These allegations refer to general,

unspecified "business" occurring throughout the country; they allege no "specific conduct that

occurred in California" to give rise to a UCL claim here.  *In re Static Random Access Memory*

*(SRAM) Antitrust Litig.*, 580 F. Supp. 2d 896, 905 (N.D. Cal. 2008).

Similarly, Plaintiff's citation to a provision in Machine Zone's terms of use that the GoW

software, applications, and other content is the "sole and exclusive property of Machine Zone"

(Resp. at 20) says nothing of whether Machine Zone's allegedly unlawful conduct emanated

from California.  At bottom, then, the only nexus with California that Plaintiff alleges is that

Machine Zone's principal place of business is located there.  Such allegations have routinely

been held to be insufficient for non-California residents to state a claim under the UCL.  *See,*

*e.g.*, *Cannon v. Wells Fargo N.A.*, 917 F. Supp. 2d 1025, 1055-56 (N.D. Cal. 2013) (allegations that the defendant was headquartered in California were insufficient to plausibly allege that the advertising in question originated from California); *Gross v. Symantec Corp.*, No. C 12-00154 CRB, 2012 WL 3116158, at *7 (N.D. Cal. July 31, 2012) (noting with respect to an allegation regarding a company's headquarters that "several courts have found that this allegation is not enough to create a plausible inference that the unlawful conduct emanated from [California]"); *Badella v. Deniro Mktg. LLC*, No. C 10-03908 CRB, 2011 WL 5358400, at *11 (N.D. Cal. Nov. 4, 2011) (finding that plaintiffs did not point to particular proof that the alleged misrepresentations emanated from California, besides its statement that defendants reside in California).

Because Plaintiff has not made any specific allegations regarding conduct emanating from California, the cases on which Plaintiff relies are distinguishable.  For example, in *Ehret v. Uber Technologies, Inc.*, 68 F. Supp. 3d 1121, 1131-32 (N.D. Cal. 2014), the plaintiff made specific allegations that "the misrepresentations were developed in California, contained on websites and an application that are maintained in California, and that billing and payment of services went through servers located in California . . . ."  And in *In re iPhone 4S Consumer Litigation*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July 23, 2013), the court found sufficient allegations that "Apple's purportedly misleading marketing, promotional activities and literature were coordinated at, emanate from and are developed at its California headquarters, and that all 'critical decisions' regarding marketing and advertising were made within the state."  Plaintiff's allegations regarding Machine Zone's principal place of business being in California come nowhere close to the specific allegations of California-related conduct

necessary to entitle Plaintiff to state a claim under the UCL.  Her UCL claim should be dismissed for this additional reason as well.

## III.   PLAINTIFF CONCEDES THAT SHE LACKS STANDING TO ENFORCE CALIFORNIA PENAL CODE SECTION 330b (COUNT I).

Plaintiff concedes that she does not have standing to bring a claim under California Penal Code Section 330b stating, "To clarify, Plaintiff does not intend to raise Count I—violation of Cal. Penal Code § 330b—as a private cause of action here."  Resp. at 5 n.1.  Accordingly, Plaintiff's first cause of action should be dismissed with prejudice.

<u>**REQUEST FOR HEARING**</u>

Pursuant to Local Rule 105.6, Defendant Machine Zone respectfully requests a hearing on its Motion To Dismiss Plaintiff's Complaint.

<u>**CONCLUSION**</u>

For the reasons stated above and in Defendant's Motion To Dismiss, the Complaint should be dismissed with prejudice.

Dated: September 10, 2015                        Respectfully submitted,

_____/s/_____
Thomas D. McSorley (D. Md. #18609)
Allyson Himelfarb (D. Md. #13929)
Arnold & Porter LLP
555 Twelfth Street, NW
Washington, D.C. 20004
Tel: (202) 942-5000; Fax: (202) 942-5999
Tom.McSorley@aporter.com
Allyson.Himelfarb@aporter.com

Sean Morris (*admitted pro hac vice*)
Arnold & Porter LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA  90017-5844
Tel: (213) 243-4222; Fax: (213) 243-41999
Sean.Morris@aporter.com

Michael A. Berta (*admitted pro hac vice*)
Arnold & Porter LLP
Three Embarcadero Center, 10th Floor
San Francisco, CA  94111-4024
Tel: (415) 471-3277; Fax: (415) 471-3400
Michael.Berta@aporter.com

*Attorneys for Defendant Machine Zone, Inc.*

35320567